## PERKINS et al. v. FISHER et al.[1]

### (Circuit Court of Appeals, Fourth Circuit.   February 7, 1894.)

### No. 55.

WILLS—DEVISES—ALTERNATIVE CONTINGENCIES—PERPETUITIES.

A devise to trustees for the purpose of division among the children of testator's son, (a person in being,) if he should have any, and in case he should die "without lawful issue," then to other persons mentioned, is a devise upon an alternative contingency; and even if the first devise is void, as creating a perpetuity, the second will take effect if the son dies without having had any lawful issue.

Appeal from the Circuit Court of the United States for the District of West Virginia.

This was a bill filed by Elma Perkins and others against Maria P. Fisher and others, to review a former decree of the circuit court. Certain defendants demurred to the bill generally. The circuit court sustained the demurrer and dismissed the bill. Complainants appealed.

Henry J. Fisher, a prominent lawyer of West Virginia, departed this life on —— day of January, 1883, leaving a last will and testament, with codicils, the last whereof is dated 25th January, 1883. The will, with its codicils, was presented and admitted to probate in the manner required by law, and Charles E. Hogg and L. F. Campbell, the executors named therein, duly qualified as such. The following is a copy of said will. The only codicil bearing on this case is the second. In it he revokes the bequests to the children of John Heisner, and his sister, Mrs. Choen, contained in the third clause of the will.

"Point Pleasant, Mason County, West Va.,
"Monday, January the 20th, 1879.

"I, Henry J. Fisher, of the town, county, state aforesaid, being of sound mind and disposing memory, do make and declare this to be my last will and testament, hereby revoking all former wills and codicils by me at any time made.   I hereby devise and bequeath my whole estate, real, personal, and mixed, wherever situated, to Charles E. Hogg and L. F. Campbell, of the town, county, and state aforesaid, in trust for the uses and purposes hereinafter mentioned, namely:

"First. For the support of my son, Henry J. Fisher, Jr., in the manner and as hereinafter directed.   This I do on account of my said son's conduct,—he having been all his life neglectful of my true interests, and also extravagant and wasteful,—and for the further reason that I cannot bear to see my estate wasted, which I have only been able to accumulate by the most rigid economy, diligence, and industry, practiced during my whole life; and, although I know it is nonsense to provide for those whom I have never seen, and forsooth may never see, still I cannot bear to see my property wasted through the drunkenness, contrariness, and sloth of my said son.

"And, in order that my said son may not be able to sell any reversionary interest in my said estate, I hereby direct my said trustees not to allow him an annual stipend, but to dole out to him a bare subsistence, and if he does not choose to eke it out by professional exertions or otherwise, let him live hard.

"I am now old and infirm, and this my last will and testament is made is accordance with a long-cherished purpose, and in some degree correspondent with a former will and codicils, which I have preserved to show my intention to preserve my property against my said son's habits of waste and extravagance.

[1] Rehearing denied, February 16, 1894.

"My son's wife is furnished, at my expense, with a house and lot in Point Pleasant, and all that he needs to do is to make a little to eat, drink, and wear; and I mention this in order that my son may be restricted in his allowance by my said trustees.

"Second. The accumulations of my estate shall be invested in good interest-bearing securities, and the accumulations thereof shall themselves be invested in like good interest-bearing securities; and if my said son should have any lawful children, my property shall be equally divided among them, giving to the girls at marriage, and to the boys at twenty-four years of age, and when one gets his share there shall be no other further division as to that matter, nor shall a death disturb the arrangement, but the interest of the one deceased shall go to augment the shares of those who have not then received their shares.

"Third. And in case my said son shall die without lawful issue, I desire that his widow be comfortably supported out of my estate during her widowhood, and the residue of my estate that is not required for a comfortable support of my son's widow during her widowhood, as aforesaid, I desire to be disposed of as follows: One-fourth thereof to Mrs. Henrietta Fowler, my natural daughter; one-fourth thereof to the lawful children of Nicholas Perkins by his present wife; one-fourth thereof to the children of John Heisner, deceased, of Gallipolis, Ohio; and the remaining one-fourth to the children of my sister, Sophia Choen.

"These devises and bequests are made in subordination to my wife's right of dower.

"And whereas, Nicholas Perkins and family are now occupying a part of my farm adjoining Long's farm, down to Crooked creek bridge, and near the town of Point Pleasant, and has made some improvements thereon, I desire my said trustees to allow him to live on and farm such part of said land until, in their judgment and discretion, he is fully and liberally paid for his said labor and improvements.

"And whereas, I have invested a part of my earnings in Virginia bonds, for which I have paid from ninety-five cents to one hundred cents on the dollar previously to the war, and have exchanged some coupons since for bonds which were scaled one-third, upon the promise that they should be punctually paid,—upon which bonds, though due, not one cent has ever been paid, and very little of the interest thereon,—I hereby require my said trustees to petition the general assembly of Virginia, at every session thereof, to pay the said trustees of my estate what is justly due me from that state, reminding said general assembly that I lost my negroes by the war, as well as they, my estate being subjected to rapine and plunder, and my person to privation, hardships, and distress; and I request them, my said trustees, to expend twenty dollars of my estate, if necessary, in getting such petitions printed and presented.

"I desire my said trustees to have a fair and reasonable compensation for their care and labor in managing and caring for my estate, and desire that they act as my executors; also, that no bond be required of them.

"This will I have drawn in duplicate, the original of which I have delivered to Charles E. Hogg, one of my said trustees and executors, and the duplicate I have kept myself.

"Witness my hand and seal this the day and year first above written.

"Henry J. Fisher. [Seal.]"

On 24th April, 1884, Henry J. Fisher, the son of the testator, filed his bill in the circuit court of the United States for the district of West Virginia, seeking to set aside the said will, and to have the same declared void and of no effect, on the following grounds: "That prior to the death of the testator he had married his present wife, and he had at the time of the death of the testator no children born of his marriage, nor has he now any children born of his marriage; that the devises and bequests to his unborn children, respectively, to wit, the boys at the age of 24 years and the girls at marriage, create perpetuities inhibited by law, and are void for remoteness; that the devise to Mrs. Henrietta Fowler, who has since intermarried with George Blackburn, now dead, being dependent on the same contingen-

cies mentioned in the devises and bequests to the unborn children of your orator, are also void; that the devises and bequests to the children of Nicholas Perkins by his present wife, being dependent upon the same contingencies mentioned in the devises and bequests to the unborn children of your orator, are also void; that the testator died intestate as to one moiety of his estate."

To this bill Charles E. Hogg and L. F. Campbell, executors and trustees, were made defendants, as well as Henrietta Blackburn, Nicholas Perkins, and Susan, his wife, and their children, Elma Perkins, Shelly Perkins, Lila Perkins, Mary Perkins, and Eugene Perkins. All of these children were then under the age of 21 years. The defendant trustees and executors demurred to the bill, in which the other defendants joined. The demurrer was overruled. Whereupon the executors filed an answer, and default was taken against the other defendants. Upon hearing, the court, on 21st January, 1885, held "that the devises and bequests in the will contained of the testator's whole estate, real, personal, and mixed, wherever situated, to Charles E. Hogg and L. F. Campbell, as trustees, as therein mentioned and described, operate as a resulting trust for the complainant, Henry J. Fisher, as testator's sole heir at law, and that the latter is entitled to a conveyance from said trustees of all the real estate of the testator, and to the immediate possession and enjoyment of the whole of the testator's estate, real, personal, and mixed, wherever situate, subject, however, to the testator's widow's right of dower, and to her distributive share in the personal estate."

The order to the executors and trustees to convey and deliver the whole estate to the son was then made, and they were enjoined from any further intermeddling with the estate. Henry J. Fisher, the younger, took possession of all the estate of his father, the testator, and departed this life in June, 1887, leaving his wife, mentioned in said will, surviving him, and never having had any children by his marriage.

On 6th June, 1890, the bill of review in question was filed by Elma Perkins and Shelly Perkins, who are of full age,—the latter attaining age in October, 1890,—and Lila Perkins, Mary Perkins, and Eugene Perkins, who are under age, and who sue by prochein ami, their father. To this bill of review are made defendants the widow of Henry J. Fisher, the testator, the trustees and executors named in his will, Henrietta Blackburn, Nicholas Perkins, Maria P. Fisher, widow and executrix of Henry J. Fisher, the son, certain alienees of the said Henry J. Fisher, the son, of property after the date of the former decree, and certain heirs at law of Henry J. Fisher, the father, —all of them having been served. The bill seeks a review of the decree of 21st January, 1885, for the following alleged errors of law, apparent on the face of the decree:

"First. Overruling the objection and demurrer to said bill, because Maria P. Fisher, a beneficiary under said will, was not made a party to said original cause.

"Second. In overruling the demurrer to said bill for want of equity therein.

"Third. In holding that the devises and bequests in the second clause of the said will and testament contained, dated 20th January, 1879, to the lawful children of Henry J. Fisher, the son, were void, as creating perpetuities and being too remote. The said clause was and is valid, because it does not create a perpetuity; the proper construction of the will being that, as soon as the children of the complainant, Fisher, were born, the property of the said testator at once vested in said children, the possession and control thereof being postponed only until the events named therein should occur.

"Fourth. In holding the contingent devise to those plaintiffs who are the lawful children of the said Nicholas Perkins by his then present wife void, as said contingency simply depended upon the death of a person then in being without lawful issue.

"Fifth. In holding the first clause of the first codicil to the said will void, as it creates an interest inuring to the benefit of these complainants immediately upon the death of said testator."

Mrs. Maria P. Fisher, widow of Henry J. Fisher, appearing, filed a petition in the cause, which, however, does not bear upon the present aspect

of the case. The defendants claiming under deeds made by Henry J. Fisher, the son, demur to the bill generally. The heirs at law of the testator permit the bill to go by default. The court below sustained the demurrer and dismissed the bill of review, because, upon consideration thereof, the court is of opinion that the second clause of the said will of Henry J. Fisher, deceased, is in violation of the rule against perpetuities, and is therefore null and void. The assignment of errors sets this up as error, and also that, even if this second clause be void for remoteness, the third clause, which is a separate and independent one, not controlled by the second, provides that, in case the son die without lawful issue, one-fourth of the estate shall go to the complainants in the bill of review, and this contingency has happened and is not too remote.

The statute of West Virginia provides that "every limitation in any deed or will, contingent upon the dying of any person without heirs, or heirs of his body, or issue, or issue of the body, or children, or offspring, or descendant, or other relation shall be construed a limitation to take effect when such person shall die not having such heir or issue or child or offspring or descendant or other relation, as the case may be, living at the time of his death or born to him within ten months thereafter, unless the intention of such limitation be otherwise plainly declared on the face of the deed or will creating it." See, also, Schultz v. Schultz, 10 Grat. 358.

Okey Johnson, for appellants.

V. B. Archer, for appellees.

Before GOFF, Circuit Judge, and SEYMOUR and SIMONTON, District Judges.

SIMONTON, District Judge, (after stating the facts as above.) The learned judge who heard this case in the circuit court was of the opinion that the second clause of this will created a perpetuity. On this ground he held that the will was void, and directed the executors to surrender the whole estate to the heir at law. Assuming that this is the legitimate construction of the second clause, let us examine the correctness of the conclusion drawn therefrom. We confine ourselves to the terms of the will proper. The effect of the codicils will be noticed hereafter.

Where a previous disposition of property in a will is void by law, or becomes impossible, it does not follow that a subsequent disposition of it in the same will will fail, although it be expressly made to follow the void or impossible disposition. In Robison v. Orphan Asylum, 123 U. S. 703, 8 Sup. Ct. 327, the testator gave the income of his estate to his wife for her life. He then gave said income to his two sisters, or that one of them who should be living at the death of himself and of his wife, and he directed that at their death the income of the whole estate be divided into three equal parts, and be given to three several charitable societies. The two sisters died before the testator. The wife survived him, and claimed the whole estate, insisting that inasmuch as the provision for the sisters lapsed, the devise to the societies dependent on it failed also. The supreme court sustained the gift to the three societies.

In Avelyn v. Ward, 1 Ves. Sr. 420, testator devised his real estate to his brother and his heirs on the express condition that he should, within three months after testator's death, execute a release of all demands on his estate, but if the brother should neg-

lect to give such release, the devise should be null and void, and in such case testator devised the estate to W., his heirs and assigns, forever. The brother died in testator's lifetime. Lord Hardwicke held that the gift over took effect. In delivering his opinion he says that he knew of no case of a remainder or a conditional limitation over of a real estate, whether by way of a particular estate, so as to leave a proper remainder, or to defeat an absolute fee before by a conditional limitation, but, if the precedent limitation by what means soever is out of the case, the subsequent limitation takes effect.

In the case of Warren v. Rudall, 4 Kay & J. 603, a devise to a charity, which is void by law, with a gift over in the event that the inhabitants are not willing to carry out the scheme, Wood, V. Ch., sustained the devise over, notwithstanding that the devise to the charity was void by law. "I cannot," said he, "see any substantial distinction between the case of a devise to a nonentity, if the nonentity should die under 21, or, again, of a devise over after the death of a deceased person, if the deceased person should fail to do a certain act, and the case before me of a devise to a charity which cannot take, followed by a devise over in the event of that charity omitting to perform a certain act."

This case went into the house of lords, and is reported as Hall v. Warren, 9 H. L. Cas. 420. Lord Campbell, then chancellor, and Lords Cransworth, Wensleydale, and Kingsdown all concur in sustaining the devise over, notwithstanding that the first devise was void by law.

In Cambridge v. Rous, 25 Beav. 414, (Sir John Romilly, master of the rolls,) there was a gift of property to trustees to invest and pay the yearly dividends to the sister of testatrix during her life, and at her death to divide the said property equally among her sister's children when they should severally and respectively attain the age of 27 years. If the sister died not leaving any child or children at the time of her death, or in case of the death of all the children under 27, the will gave the whole property to certain relations of testatrix. Held, notwithstanding that the provision for the children was too remote, the devise over was good, the sister having died without children.

In Monypenny v. Dering, 2 De Gex, M. & G. 145, before St. Leonards, Ld. Ch., (devise in trust for A. for life, and after his decease in trust for his first son for life, and after the death of such first son in trust for the first son of the body of such first son and the heirs male of his body, and in default of such issue in trust for all and every other son and sons of the body of A., severally and successively, according to seniority, for like interests and limitations as hereinbefore directed respecting the first son and his issue, and in default of issue of the body of A., or in case of his not leaving any at his decease, in trust for B.,) the learned chancellor held that the limitation to the unborn son of an unborn son of A. was void, but that the devise to B. was good in the alternative event, which happened, of A. not leaving any issue at his death. In the fifth edition of Jarman on Wills, by

Bigelow, (volume 1, p. 285,) the doctrine is stated, and the English cases set out in the text.

The supreme court of Massachusetts, in Jackson v. Phillips, 14 Allen, 572, lay down the same rule. The court says:

"The general rule is that if any estate, legal or equitable, is given by deed or will to any person in the first instance, and then over to another person, or even to a public charity, upon the happening of a contingency which may by possibility not take place within a life or lives in being and twenty-one years afterwards, the gift is void, as tending to create a perpetuity. * * * If, therefore, the gift be limited upon a single event, which may or may not happen within the prescribed period, it is void, and cannot be made good by the actual happening of the event within that period; but if the testator distinctly makes his gift over to depend upon what is sometimes called an alternative contingency, or upon either of two contingencies, one of which may be too remote and the other cannot be, its validity depends on the event. Or, in other words, if he gives his estate over on one contingency, which must happen, if at all, within the limit of the rule, and that contingency does happen, the validity of the distinct gift over will not be affected by the consideration that, upon a different contingency, which might or might not happen within the lawful limit, he makes a disposition of his estate which would be void for remoteness. The authorities on this point are conclusive."

The case of Armstrong v. Armstrong, 14 B. Mon. 333, sustains the same position.

Jarman states the principle and draws the distinction. "Where the gift over is to arise on an alternative event, one branch of which is within, and the other is not within, the prescribed limits, so that the gift over will be valid or not according to the event," (1 Bigelow, Jarm. Wills, [5th Ed.] p. 285;) or, as it is put in the Massachusetts case above cited, if the gift over be upon an alternative contingency, if one of the alternatives be not too remote, and the event transpires, so as to make the gift over available if deemed valid, such gift will be supported, notwithstanding the fact that the other alternative is too remote," (Jackson v. Phillips, supra.)

If we examine the language of this will we will find that the testator disposes of his estate upon an alternative contingency. Grieved by the unfilial conduct of his son, the testator gives him by the will proper no interest in his property which would be subject to his disposition. He creates in him no particular estate with a limitation over; consequently, if that limitation be too remote, no absolute estate can vest in him as the first taker. He leaves him subject to the discretion of, and at the mercy of, his executors and trustees. Turning from him, he gives the fee in his realty and the absolute estate in his personalty to these trustees, so that the whole property may be kept together and preserved until his ultimate wishes regarding it shall have been accomplished. The burden of the trusts remains on them, and their heirs and representatives, until the happening of one or the other of two events. He selects as the objects of his bounty: First. The children of his son, should such children come into being. "If my said son should have any lawful children, my property shall be equally divided" between them, etc. Second. "In case my said son shall die without lawful issue," he provides for

those named in the third clause, which next succeeds. The language of this clause does not impinge upon the rule as to perpetuities. The statute of West Virginia limits the generality of the expression. And it would seem that, even without this statute, the limitation over would be good. The words, "in case my said son shall die without lawful issue," immediately follow a clause making a gift to the lawful children of the son, should he have any. "It is well settled," says Mr. Jarman, "that words importing failure of issue, following a devise to children in fee simple or fee tail, refer to the objects of that prior devise, and not to issue at large." 3 Rand. Jarm. Wills, (5th Ed.) p. 256. In Treharne v. Layton, in Ex. Ch. chamber, L. R. 10 Q. B. 459, testatrix gave her estate, real and personal, to M. for her sole use during her life, and after her death to her children in equal parts, and in case M. die leaving no issue, the whole property to go to the next of kin; held, affirming the queen's bench, that the words "leaving no issue" must be construed as "having had no issue." See, also, Maitland v. Chalie, 6 Madd. 250. And the same construction is put on the words "without leaving." They are held to be the same as "without having" by Jessel, M. R., in Re Jackson's Will, L. R. 13 Ch. Div. 194. Between these two classes, the testator had a marked preference in favor of his son's children. If they came into existence, the other class could not take anything. And he postponed any ultimate disposition of his estate to the last moment of the possibility of their coming into existence,—the death of his son. Only upon this alternative, the death of his son without lawful issue, or, we may say, never having had lawful issue, could this postponed class take. So intent was he that his whole estate and its usufruct should be preserved for the possibility of children of his son, the testator made no provision for the wife of his son, notwithstanding his evident regard for her, until she should become the widow of his son. Here there is clearly an alternative: If my son has lawful children, the whole of my property to them: in case my son should die without lawful issue,—without having had lawful issue,—this selfsame property, charged with a proper support of his son's widow, goes to the postponed class. Whatever may be the construction of the second clause, be it valid or not, yet, under the terms of the third clause, so long as any descendant of the testator existed, the class mentioned in this third clause could take nothing. This case, therefore, comes within the distinction made by Lord St. Leonards, Chancellor, in Monypenny v. Dering, 2 De Gex, M. & G. 182:

"If the gift in question can be read as a gift in the alternative, that in case there is no issue living at the death of the brother, the estate is to go over, then effect may be given to it, consistently with Beard v. Westcott, 5 Taunt. 393, Turn. & R. 25, and every other authority, because the estate over would not be carried under the limitation at the expense of any person whom the testator intended to take, and no objection on this ground could consistently be raised."

We are of the opinion that the decree of 21st January, 1885, was premature because, at that time, the son being alive, non constat

whether or not he would die without lawful issue. The case at that time came within Jackson v. Phillips, 14 Allen, 573. In that case the court says:

"Neither James Jackson nor Mrs. Palmer is entitled to a present equitable estate in fee. But as James, though now unmarried, may marry and have children who survive him, and as Mrs. Palmer's children may survive her. —in either of which cases half of the income of the share would, by the will, go to such children during their lives, and the bequest over to the charity be too remote,—the validity and effect of that bequest cannot now be determined. If the contingency upon which it is valid should hereafter occur, —namely, the death of testator's son and daughter, respectively, leaving no children,—the whole remainder of the share will then go to the charity."

This course should have been followed here. We are also of the opinion that the decree sustaining the demurrer to the bill of review is erroneous, in that the third clause of the will presents an alternative event, and can go into operation even if the second clause be void; and that the testator did not die wholly intestate.

The testator, in Codicil No. 2 of his will, revoked the provision, made in the third paragraph of his will, of one-fourth of the residue to the children of Sophia Choen, and of another fourth to the children of John Heisner. These are fourths of the residue of his estate, after a comfortable support for the widow of his son during her widowhood is secured. Subject to this charge, these two-fourths have been undisposed of by the testator, and to that extent went to the son as heir at law.

The decree is reversed, and the case is remanded for such other proceedings as may be proper and consistent with this opinion.