OHIO RIVER R. CO. et al. v. FISHER.

(Circuit Court of Appeals, Fourth Circuit. May 8, 1902.)

No. 411.

1. **VENDOR AND PURCHASER—PROTECTION OF BONA FIDE PURCHASERS—REVERSAL OF DECREE ON BILL OF REVIEW**

A testator left all his property to trustees for certain purposes, among which was the payment to his son's wife, in case she should become a widow, without children, of an annuity sufficient to afford her a comfortable support during her widowhood. The son contested the will, and a decree was entered setting it aside and directing the trustees to convey the property to the son as heir at law, which they did. Thereafter the son sold all the property, his wife joining in the deeds for the purpose of relinquishing her right of dower. After his death a bill of review was filed by certain of the defendants in the suit, in which the decree was reversed, and the will was held valid. Thereafter the son's widow filed a petition to charge the lands sold with the payment of her annuity under the will. *Held* that, as between her and the purchasers of such lands, who bought in good faith and for full value in reliance on the decree, the equity of the latter was superior, and their rights were not affected by the proceedings on the bill of review.

2. **RES JUDICATA—MATTERS CONCLUDED.**

A decree rendered on demurrer is conclusive only on the issues joined by the pleadings; and where a decree so rendered adjudged the validity of a will, which was the matter in issue, but the court in its opinion held that the will was inoperative as to certain bequests which had been revoked by a codicil, and that such bequests became intestate property, subject to a legacy previously charged by the will upon the whole estate, such decree cannot be pleaded as an adjudication of the rights of such legatee.

3. **WILLS—LANDS CHARGED WITH LEGACY—EFFECT OF CONDEMNATION.**

Where land was regularly condemned for railroad purposes at a time when the legal title was in the executors and trustees of a testator, who were made parties, and to whom the compensation was paid, such land was released from liability for a legacy which was made by the testator a charge upon his estate generally

4. **APPEAL—FINALITY OF DECREE.**

A decree fixing the amount of an annuity to which a legatee was entitled under a will, adjudging it to be a charge upon the lands of the testator, and appointing a receiver to collect the same from such lands, is not final and conclusive of the rights of the annuitant, where, during the same term, it was suspended as to certain purchasers of the lands and afterward a reference was made and a further hearing had, and an appeal from the decree subsequently entered brings up the entire case for review.[1]

Cross Appeals from the Circuit Court of the United States for the District of West Virginia, at Parkersburg.

H. P. Camden, for Ohio River R. Co. and Lewis Pfalzgraf.
V. B. Archer, for Maria P. Fisher.

Before GOFF and SIMONTON, Circuit Judges, and KELLER, District Judge.

[1] Quality of judgments for purpose of review, see notes to Trust Co. v. Madden, 17 C. C. A. 238; Prescott & A. C. Ry. Co. v. Atchison, T. & S. F. R. Co., 28 C. C. A. 482; Emigration Co. v. Gallegos, 32 C. C. A. 475.

SIMONTON, Circuit Judge. This case comes up on an appeal from the decree of the circuit court of the United States for the district of West Virginia.

Henry J. Fisher, a prominent lawyer in West Virginia, departed this life in 1883, seised and possessed of considerable real and personal estate. He left a widow and but one child, a son, Henry J. Fisher, Jr. By his last will and testament he devised and bequeathed the whole of his estate, real and personal, to Charles E. Hogg and ¡L. F. Campbell, as trustees in trust to dole out to his son a bare subsistence. He then directs that the accumulations of his estate be safely invested, and, if his son should have any lawful children, that his property be equally divided among them, the shares of the daughters to be paid on marriage, and those of the sons at 24 years of age. In case his son dies without lawful issue, he wished that his widow be comfortably supported out of his estate during her widowhood, and the residue of his estate, not required for such comfortable support of his son's widow, he wishes divided into four parts,— one-fourth to his natural daughter, Mrs. Fowler, one-fourth to the lawful children of Nicholas Perkins, one-fourth to the children of John Heisner, and one-fourth to the children of his sister, Sophia Choen; all these in subordination to his wife's dower. By a codicil to his will he revoked the gift of the one-fourth to the children of John Heisner and also of the one-fourth to the children of Sophia Choen. He appointed the persons named as trustees his executors also. The will was duly filed for probate, and the trustees and executors took charge of the estate. On April 24, 1884, a bill was filed in the circuit court of the United States for the district of West Virginia by Henry J. Fisher, the son, to which Mrs. Eliza S. Fisher, widow of the testator, Hogg and Campbell, trustees and executors, Henrietta Blackburn, Nicholas Perkins and Susan Perkins, his wife, Elma Perkins, Shelby Perkins, Lila Perkins, Mary Perkins, and Eugene Perkins were made defendants. This bill sought to have the will of Henry J. Fisher declared invalid, by reason that it created perpetuities. By a decree of that court, made upon hearing the issues of the bill, the will of Henry J. Fisher, the elder, was declared invalid, and the trustees and executors were ordered to deliver up the whole property to Henry J. Fisher, the younger, the heir at law of the testator. This order of the court was carried into effect by the trustees and executors. On June 11, 1890, a bill of review of this decree was filed in the same circuit court by Elma Perkins et al. against all the other parties to the first suit, which bill and the answers thereto were heard by the circuit court. The cause came up by appeal into this court, and by its order and decree the validity of the will was sustained, and, as the testator had revoked in a codicil to his will the one-fourth of his residue bequeathed to the children of John Heisner and the one-fourth bequeathed to the children of Sophia Choen, this court declared that these are fourths of the residue of the estate, after a comfortable support for the widow of the son of the testator during her widowhood is secured. Subject to this charge, these two-fourths have been undisposed of by the testator, and to that extent went to his son as heir at law. Perkins v.

Fisher, 8 C. C. A. 277, 59 Fed. 801. Pending this bill of review, Mrs. Maria P. Fisher, widow of the son, Henry J. Fisher, Jr., filed her petition in the cause, in which she set forth that her husband had died childless; that she had received nothing from the estate of the testator toward a comfortable living, and prayed that, in case the will be declared valid, her provision, which was a charge on the whole estate, should be secured to her, and to that end that the executors and trustees, who had possessed themselves of the personal estate, and had converted the same to their own use, be compelled to account for the same. The cause having been remanded to the circuit court, this petition was pressed, and upon some of the questions arising under it the cause is in this court. A special master was appointed upon the presentation of the petition, who was instructed to inquire and report: (1) Of what real estate the testator, Henry J. Fisher, died seised; (2) who claim to be the present owners of such real estate, and under what title; (3) the fair rental value of each tract or house and lot, and what has been the yearly rental value of each for each year since the death of testator; (4) the annual rental value of each of them at this time; (5) the value of improvements made on each of them since the death of the testator, and the increase of rental value because of these improvements; (6) the age of Mrs. Maria P. Fisher, widow of H. J. Fisher, Jr.; (7) what sum would give her a comfortable support during her widowhood; (8) what personalty came into the hands of the executors of H. J. Fisher, the testator, and what disposition has been made of it. The master made a full and elaborate report on all of these points.

The age of Mrs. Fisher is 39 years, and the amount necessary to give her a comfortable support is fixed at $700. All the realty of which H. J. Fisher died seised has been sold, between July 4, 1885, and June 15, 1886; that is to say, during the interval of the decree declaring the will invalid and the filing of the bill of review. The great majority of these tracts and lots were sold and conveyed by H. J. Fisher, Jr., his wife joining in the deeds so as to release her dower. One lot was forfeited for taxes, one or two sold and conveyed by Mrs. Maria Fisher, she having obtained a tax title therefor, and one was sold by her as executrix of her husband. The master reports in full detail the present rental value of each parcel, its average rental value during the period stipulated, the average between these and the amount apportioned to each upon the assumption that each of them is liable to contribute to the comfortable support of Mrs. Maria P. Fisher, at $700 per annum. The report having been filed, the court, on February 20, 1897, confirmed so much of it as stated the age of Mrs. Fisher, and fixed the amount of $700 as a sum for her comfortable support, ordering the compensation to begin as of June 18, 1887, the date of her husband's death. And, further, the court, after reciting the several tracts and parcels of land and the owners thereof, and the aliquot annual payment each should make in order to get the said sum of $700 per annum, adds:

"And the court doth charge upon the several parcels of real estate and other property, as now divided up among the several holders above named, the several amounts so decreed to be paid as an annual charge against the

several parcels of property claimed by them, respectively, as aforesaid, from June 18, 1887."

This order was suspended as to the Ohio River Railroad Company, one of the owners of a part of Fisher's land, on March 30, 1897, and on the same day that company filed a petition hereinafter mentioned. On March 5, 1898, at the instance of Maria P. Fisher, a receiver was appointed to collect from each tract of land the sum apportioned against it by the master, with all arrearages from February 20, 1897, and an injunction issued to enforce the same. As has been stated, the Ohio River Railroad Company, having obtained an order suspending the decree of March 30, 1897, filed its petition in the cause. This petition, after stating that it was a party to the bill of review, refers to the decree of January 21, 1885, declaring Fisher's will invalid; that thereupon the lands of the testator were conveyed by Hogg and Campbell, trustees and executors, to Henry J. Fisher, Jr., among these a farm adjoining the town of Point Pleasant, known as the "Fisher Farm"; that on January 28, 1885, Fisher, the son, executed a deed of trust of this farm to Bright and Sehon, trustees, as security for debt, and on January 29, 1885, and February 10, 1885, executed two other deeds of trust to same trustees; that these deeds of trust were foreclosed, and J. N. Camden became the purchaser at public sale May 14, 1887; that Mrs. H. J. Fisher was notified of a motion to confirm this sale, but made no objection; that the sale was confirmed and title made to J. N. Camden; that J. N. Camden conveyed the land so purchased to the Point Pleasant Manufacturing & Extension Company, who divided the land into town lots, sold some of them to other parties and conveyed the remainder to the Ohio River Railroad Company, and so it claims title; that another piece of the Fisher land was condemned by regular proceedings instituted against Hogg and Campbell, trustees, and the money assessed for the value of the land paid to them, Mrs. Fisher never interposing or offering any objection. The petition also sets up that there was a large amount of personalty in the estate of Fisher, out of which this legacy to Mrs. Fisher should be paid, also that petitioner holds the legal title from trustees named in the will, and also that Mrs. Maria P. Fisher recognized the title of the lands to be in her husband by renouncing dower therein, by standing by and seeing them sold and being silent. Mrs. Fisher, in her answer, denies the statements of the petition. On June 29, 1898, Lewis Pfalzgraf obtained permission to file an answer to the petition of Maria P. Fisher. The master reported that he had acquired title to 300 or 322 acres in Wood county, W. Va., by deed from Henry J. Fisher and wife to him, dated July 14, 1885, and duly recorded. In his answer Pfalzgraf denies that his land should be assessed for any annuity or arrears of annuity to Mrs. Fisher, for these reasons: He was a bona fide purchaser without notice from Henry J. Fisher, Jr., by deed dated July 14, 1885, in which deed Mrs. Maria P. Fisher joined with her said husband, and that the title accrued before the bill of review was filed or decided. He avers also that the testator, Henry Fisher, Sr., left a large amount of personal estate, which should be first exhausted before the lands can be assessed for the

support of the widow of his son, and that Mrs. Fisher has, in fact, received large sums from said personal estate. He also avers that the estate of H. J. Fisher, the testator, has long since been forfeited for taxes. The master reports the accounts of Hogg and Campbell, executors and trustees, by which it is claimed that, after disbursements because of the estate, they paid to H. J. Fisher, Jr., $17,383, and to the widow of the testator, presumably for her dower, $8,242, leaving due by them to the estate $100. The master also reports the accounts of Mrs. Maria P. Fisher, as executrix of her husband, H. J. Fisher, Jr. By this it appears that she received as her award, as widow, in all, $1,455, and that she is indebted to that estate $547.85. This debt she claims to have accounted for, but the master does not report it. All credits to the estate came from the estate of the testator.

The cause came on to be heard on the petitions of Mrs. Fisher and the Ohio River Railroad Company, and on the answers of Pfalzgraf and the other parties, with the report of the master. The court, after argument, held:

(1) That the transactions of Mrs. Maria P. Fisher, as executrix of her husband, do not bar her claim to a support out of the estate of H. J. Fisher, Sr., notwithstanding the fact that all of the property so administered by her as the property of the son was, in fact, part of the father's estate. The reason given is that all of this occurred after the will was declared invalid, and before the bill of review was filed. And also because her accounts as executrix were settled in a court of competent jurisdiction.

(2) The court also held that the joinder of Mrs. Fisher with her husband in the deeds conveying the lands left by the testator did not bar her from claiming comfortable maintenance out of these lands, for the reason that by so doing she only barred her contingent right of dower.

(3) With regard to the right of way over the Fisher lands, obtained by way of condemnation by the Ohio River Railroad Company and the Kanawha & Michigan Railroad Company, the court sustains this acquisition, the trustees and executors, in whom was the fee, being parties thereto, and remits Mrs. Fisher to her claim on the fund, or so much of it as exists, which was paid under the award of the commissioner.

(4) The court also held that Mrs. Maria P. Fisher has settled or compromised with some parties holding parcels of the lands of the estate of Fisher, the elder, and to the extent of the amounts assessed on such parcels, diminishing the sum to be paid her for her comfortable support. As a result, the court assesses against each several parcel of land, not so released, its share in the annuity allowed Mrs. Fisher, calculating the same to begin from the death of her husband, June 18, 1887. It also ordered executions to issue against the several parties now owning the respective parcels of land assessed for the several sums assessed against them, respectively, and, in case these executions be not paid, the land, the owner of which is in default, be levied upon, and, after advertisement, sold for the payment of the assessments, respectively; all such sales to be made subject to

the future annual payments of the several sums assessed on each of said parties.

From this decree the Ohio River Railroad Company and Lewis Pfalzgraf applied for and obtained leave to appeal. Mrs. Maria P. Fisher also applied for and obtained leave to appeal. These appeals are here on the errors assigned. The Ohio River Railroad Company and Pfalzgraf join in their appeal.

The conclusion we have reached in this case renders unnecessary a discussion in detail of the first of these assignments of error. The Ohio River Railroad Company and Lewis Pfalzgraf are bona fide purchasers for valuable consideration, without notice, from H. J. Fisher, Jr., after a final decree declaring his father's will invalid and recognizing his right as heir at law, and after a decree directing the trustees and executors named in the will to convey to him the realty and deliver to him the personalty. This decree, filed January 21, 1885, invested H. J. Fisher, Jr., with all the evidence of an absolute title. Then these appellants purchased, paid their money, entered into and remained in possession of the realty thus acquired. "No equity can be stronger than that of a purchaser who has put himself in peril by purchasing for valuable consideration without notice of any defect in the title." Boone v. Chiles, 10 Pet. 177, 9 L. Ed. 388. How are they affected, as respects the rights of Mrs. Maria P. Fisher, by the bill of review filed in 1890, several years after their purchase? In Recter v. Fitzgerald, 8 C. C. A. 277, 59 Fed. 808, we find this: A bill of complaint had been filed by R., and a final decree had been entered May 2, 1881, dismissing the bill. R. appealed from the decree, but failed to prosecute the appeal, and it was dismissed December 6, 1881. On February 29, 1884, one F. took a mortgage on lands, the subject matter of the litigation, from one who had purchased from successful party. On April 29th thereafter R. filed his bill of review, to which he made F., the mortgagee, and his mortgagor parties. He sought to reverse the former decree for error appearing on the record. F. pleaded his equity as a bona fide purchaser without notice. After a full and elaborate discussion, the court held that the purchaser without notice bona fide, after a final decree in favor of his grantor, had a title which could not be affected by a decree rendered on a bill of review subsequently filed; that a bill of review will not be regarded as a continuation of the original suit, so as to affect a person purchasing the property in controversy in good faith from the successful party, after a final decree and without notice of any intention to file a bill of review. This case cites Ludlow's Heirs v. Kidd's Ex'rs, 3 Ohio, 541. Certain infants filed a bill to obtain the legal title to certain lands. The bill was dismissed on final hearing. The defendants, who were in possession of the land and had an apparent legal title, sold the same to third persons, strangers to the suit. A statute of Ohio allowed infants five years after attaining majority to bring a bill of review in cases of this character. The complainants availed themselves of this statutory right after becoming of full age, and prayed a reversal of the original decree. It was held, after a careful scrutiny of the authorities, that the intermediate purchasers were not affected

by the decree of reversal. This case also quotes Lee Co. v. Rogers, 7 Wall. 181, 19 L. Ed. 160, in which it is held that a purchaser bona fide of bonds, after a final decree declaring them valid, and before a decree on bill of review declaring them invalid, was not affected by the latter decree, because they were distinct and independent suits. This doctrine seems also to have been recognized in Bank v. Ritchie, 8 Pet. 146, 8 L. Ed. 890. On a bill of review Chief Justice Marshall set aside sales made under the authority of a decree which he reverses. He, however, gives it as a reason for this that the title acquired by the purchasers was defective in itself, inasmuch as the executor, who made the sale, had not complied with the terms of the decree under which he claimed to act, and because it also appeared that the bill of review asked that these conveyances be set aside on this ground. These authorities present a strong case. When we apply them to the circumstances of this case, the equities of the purchasers without notice, as compared with the equity of Mrs. Fisher, seem the stronger. It can scarcely be possible that she did not know of the recorded will of H. J. Fisher, Sr., in which he had practically cut his son, her husband, off from any but the smallest interest in his estate in favor of his children, with incidental benefit to her, if she became his widow; or that she was not aware of the purpose of her husband to contest the will, of his action in this regard and his success. She certainly was aware that he was conveying away all the realty his father left, as she joined in the conveyances, renouncing her dower. Upon the death of her husband she, as his executrix, took possession of that part of the estate which was left, sold parts of the realty, purchased at tax sales a part which had been forfeited, and sold it again. She received part of the purchase money from persons who had purchased from her husband, notably Pfalzgraf, one of these appellants. She administered her husband's estate and received in cash over $2,000, as a wife's portion. She never took any steps to review or reverse the conclusion of the final decree, and when the bill of review was filed, she having been made a party to it, asked only that if the former decree be reversed she be allowed her annuity. It is true that she was a married woman, but under the laws of West Virginia she was not under disability. Under these circumstances we are of the opinion that the equities of the Ohio River Railroad Co. and of Lewis Pfalzgraf must prevail as against those of Mrs. Fisher.

It is contended, however, that the decree of this court in Perkins v. Fisher, 8 C. C. A. 270, 59 Fed. 801, is res judicata, and settles the right of Mrs. Fisher to this annuity. That case came up on demurrer. The sole question was as to the validity of the will of H. J. Fisher, Sr. This court held the will valid, but inasmuch as by codicil the testator had revoked certain bequests and legacies in his will, without making further disposition, it was held that as to these bequests he died intestate, and that they descended to his heir at law, subject, however, to the charge of a comfortable support for the wife of the heir at law, if she became his widow. This charge had been made before the disposition of the estate. The sole question was as to the validity of the will, and, being on demurrer, the

conclusion was only on the facts stated on the record (Gould v. Railroad Co., 91 U. S. 526, 23 L. Ed. 416); upon the exact point raised in the pleadings, and on nothing else (Wiggins Ferry Co. v. Ohio & M. R. Co., 142 U. S. 397, 12 Sup. Ct. 188, 35 L. Ed. 1055). The judgment was conclusive only upon the matter within the issue and necessarily involved in the decision (McCall v. Carpenter, 18 How. 297, 15 L. Ed. 389; Packet Co. v. Sickles, 5 Wall. 580, 18 L. Ed. 550; Last Chance Min. Co. v. Tyler Min. Co., 157 U. S. 683, 15 Sup. Ct. 733, 39 L. Ed. 859). Even were it not so, it would not preclude the inquiry whether the widow had not parted with all or any part of her right. In the decree we are reviewing the court held that she had either compromised or released a large part of her annuity.

Mrs. Maria P. Fisher also assigns error in the decree as follows:

First. Because the court doth release one-half of the land owned by Lewis Pfalzgraf, and also doth release one-half of the remaining one-half of said land of Lewis Pfalzgraf from the claim of the said defendant to her support as fixed by the commissioner in said cause.

Second. Because the court released the right of way of the Kanawha & Michigan Railroad Company from the lien or charge of the defendant fixed against the same as ascertained by the commissioner in said cause.

Third. Because the court released the right of way of the Ohio River Railroad Company from the lien or charge against the same as ascertained by the commissioner in said cause.

Fourth. Because the court sustained the exceptions of the Ohio River Railroad Company to the report of John T. Harris, commissioner in said cause, to the extent of releasing the right of way of said Ohio River Railroad Company from the lien claimed by the said defendant.

Fifth. Because the court reduced the annuity or charge against the estate of Henry J. Fisher, Sr., from the amount, to wit, $700, as ascertained by the commissioner, to the sum of $337.93 per annum.

What has been said supra meets the first assignment of error.

With regard to the second, third, and fourth assignments of error, it appears that proceedings for condemnation of a right of way were regularly entered by the Kanawha & Michigan Railroad Company, and by the Ohio River Railroad Company, to which the trustees and executors of H. J. Fisher, the elder, were made parties. Under the will they had in them the fee and the legal estate. There is nothing to show that these proceedings were irregular and unauthorized, and the conclusion of the court below as to them must be sustained.

With regard to the fifth assignment of error, the master and the court below both found that Mrs. Fisher had compromised and released lands held by some persons which had been assessed to an amount which would reduce her claim to $337.93. We see no error in this.

Her counsel object to the appeal upon the ground that the order of 20th February, 1897, and the decree of 5th March, 1898, are final, and that from them there was no appeal. A final decree is one which concludes all matters in controversy and can execute itself. Neither

of these orders are of that character. The court itself went into further examination, made references to the master, received his report, and then only finally fixed the amount and mode of distribution.

It is ordered that so much of the petition of Mrs. Maria P. Fisher as relates to the appellants, the Ohio River Railroad Company and Lewis Pfalzgraf, be dismissed, and that in all other respects the decree of the court below be affirmed.

Decree below modified.