JOHN II ESTATE, Limited, et al. v. BROWN et al.

(Circuit Court of Appeals, Ninth Circuit. October 7, 1912.)

No. 1,996.

1. WILLS (§ 471*)—CONSTRUCTION—TRANSLATION OF WILL WRITTEN IN HAWAIIAN LANGUAGE.

Where a clause in a will written in the Hawaiian language was capable of two admissible translations into English, one of which made it harmonize with the other provisions of the will, while the other rendered the will contradictory in terms and inconsistent in purpose, the court properly adopted the former.

[Ed. Note.—For other cases, see Wills, Cent. Dig. § 989; Dec. Dig. § 471.*]

2. WILLS (§ 614*)—CONSTRUCTION—ESTATE DEVISED.

A will written in the Hawaiian language, as translated, contained the following provisions: "All my property, both real and personal, shall descend to my heirs who are mentioned below as follows: First. Irene Haalou Ii, my own daughter, is the first heir as follows: [Here follows description of certain real estate] and one-half of all my personal property. * * * Fifth. * * * By this will I have appointed and I do hereby appoint, * * * they both to be executors and guardians of the person and property of my daughter, the first devisee mentioned in this will. All the income from the lands that are leased and all other receipts from all the lands of my daughter they two alone shall have the sole care of it until she becomes of age, and in the event of her giving birth to children they shall be the executors during the lifetime of my daughter and her children in accordance with my wishes expressed in this will. * * * And further, if my daughter should die having borne children, then the property shall descend to her children, and if she should die without having had any children the property shall descend to her own mother. * * *" The daughter married after the testator's death and had children. Held, that the will gave her a life estate only in the lands, with remainder in fee to her children.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 1393–1416; Dec. Dig. § 614.*]

3. WILLS (§ 471*)—CONSTRUCTION—ESTATE DEVISED.

If the granting clause in a devise of real estate in clear, certain, and definite terms devises an estate in fee, it cannot be qualified by subsequent provisions, unless the intention to do so appears in equally clear and unmistakable terms; but if the granting clause is indefinite and uncertain as to the estate devised, subsequent provisions may be referred to for the purpose of determining it.

[Ed. Note.—For other cases, see Wills, Cent. Dig. § 989; Dec. Dig. § 471.*]

4. WILLS (§ 450*)—RULES OF CONSTRUCTION.

It is a fundamental rule in the construction of wills that, if possible, effect be given to every word and every clause, and the several clauses

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

should be made to harmonize with the general intent of the testator, as it may be gathered from a consideration of the whole instrument.

[Ed. Note.—For other cases, see Wills, Cent. Dig. § 966; Dec. Dig. § 450.*]

5. COURTS (§ 387*)—COURTS OF REPUBLIC OF HAWAII—CONSTRUCTION OF STATUTE—POWER TO RESERVE QUESTIONS FOR SUPREME COURT.

Laws Hawaii 1892–93, c. 57, § 72, which provides that, whenever any question of law shall arise in any trial before a circuit court, the presiding judge may reserve it for the consideration of the Supreme Court, did not authorize a circuit judge to reserve the question of the construction of a will, to ascertain the intention of the testator with respect to a trust created by the will, which was one of fact, and not of law.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 1032–1037; Dec. Dig. § 387.*]

6. JUDGES (§ 27*)—POWERS AT CHAMBERS—HAWAIIAN STATUTE.

Such authority, not being vested in the court, but in the presiding judge, might lawfully be exercised by him while sitting in equity in chambers.

[Ed. Note.—For other cases, see Judges, Cent. Dig. §§ 109–139; Dec. Dig. § 27.*]

7. INFANTS (§ 113*)—JUDGMENT—SUIT TO CONSTRUE WILL—MINORS UNREPRESENTED BY COUNSEL.

A decree, which either directly or incidentally determined the respective interests of a mother and her minor children under a will, which were necessarily adverse, is not binding on the minors, where they were represented only by the counsel who also represented their mother.

[Ed. Note.—For other cases, see Infants, Cent. Dig. § 321; Dec. Dig. § 113.*]

8. JUDGMENT (§ 574*)—NECESSITY FOR ENTRY.

Where an appellate court filed an opinion, answering certain questions, which had been reserved for its determination in an equity suit by the judge of a lower court, as authorized by statute, but neither entered a decree nor remanded the cause, and no decree was ever entered by the lower court, there was no adjudication binding on the parties.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. § 1021; Dec. Dig. § 574.*]

9. JUDGMENT (§ 572*)—MATTERS CONCLUDED—SCOPE OF DECREE ON DEMURRER.

A decree dismissing a bill in equity on demurrer on specific grounds set forth in the opinion of the court, referred to therein, is conclusive only on the specific questions so determined; and where they do not go to the merits, the opinion of an appellate court, which affirms such decree, cannot enlarge its scope to cover the merits, and bar a subsequent suit.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. §§ 1041, 1047–1049; Dec. Dig. § 572.*]

10. JUDGMENT (§ 489*)—COLLATERAL ATTACK—WANT OF JURISDICTION.

Where an appellate court was without jurisdiction to answer a question reserved for its decision by a lower court, its decision of such question was absolutely void, and subject to collateral attack in any other court.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. §§ 924, 925; Dec. Dig. § 489.*]

In Error to the District Court of the United States for the Territory of Hawaii.

Petition by the United States to condemn certain real estate at Pearl

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Harbor, on the Island of Oahu, in the territory and district of Hawaii, for the uses and purposes of the United States. Award of $10,000 to the owners of the land. Answer was filed by the John Ii Estate, Limited, a Hawaiian corporation, by Charles A. Brown and John A. Magoon, directors, claiming the entire award, and by George Ii Brown, and Francis Hyde Ii Brown, a minor, by A. A. Wilder, as guardian ad litem, claiming an interest therein. Decree in favor of the latter named defendants, and the John Ii Estate, Limited, brings error. Affirmed.

This cause comes before this court upon a writ of error to the United States District Court for the Territory of Hawaii to review the action of the court in determining the claims of contesting claimants to a fund of $10,000 paid into the registry of the court by the United States for a tract of land, containing 50 acres, taken under condemnation proceedings.

On February 10, 1906, the United States filed its petition in condemnation proceedings in the United States District Court for the Territory of Hawaii for a tract of land having an area of 50 acres on Pearl Harbor, in the Island of Oahu, in the territory and district of Hawaii. The land described in the petition is a portion of the ahupaa (or tract) of Waipio, which was the property of one John Ii at the time of his death in 1870. The defendants and respondents named in the petition in condemnation were the John Ii Estate, Limited, a Hawaiian corporation, Carl S. Holloway, Irene Ii Holloway, Francis Hyde Ii Brown, George Ii Brown, Irene Ii Holloway, as guardian of the persons and estate of Francis Hyde Ii Brown and George Ii Brown, and Charles A. Brown, John A. Magoon, Alfred W. Carter, Sidney M. Ballou, and Irene Ii Holloway, directors of the John Ii Estate, Limited.

Answers were filed by Francis Hyde Ii Brown, a minor, and George Ii Brown, a minor, by A. G. M. Robertson, their guardian ad litem, and by the John Ii Estate, Limited, by Charles A. Brown and J. Alfred Magoon, directors. The only material issue raised in the answers was contained in the answer of the two minors, by their guardian ad litem, in which it was alleged that their claims in and to said parcel of land were adverse to and in conflict with the claims of the other defendants, and that it would be necessary for the court, in the event of the prayer of the petition being granted, to decide said respective claims, and to apportion the money that might be adjudged to be paid by said petitioner for said land. The petition was heard by the court, and on August 24, 1909, judgment was entered, wherein it was adjudged that the land described in the petition should be condemned for the uses and purposes of the United States as in said petition alleged. The value of the tract of land condemned was fixed and determined to be the sum of $10,000, and this sum it was adjudged should be paid as compensation for said land to the defendants and respondents, or such of them as might thereafter be adjudged entitled thereto. The contesting claimants to this award were the John Ii Estate, Limited, claiming the whole of the award, and Francis Hyde Ii Brown, a minor, and George Ii Brown, each claiming an interest in said award.

The John Ii Estate, Limited, claimed the whole of the award upon the ground that the land for which the $10,000 was paid belonged to the John Ii Estate, Limited, in fee simple; that the land was by John Ii devised in fee to Irene Ii by will; that said will was admitted to probate in the Supreme Court of the Hawaiian Islands on the 10th day of June, 1870, and confirmed to her by the decision of the Supreme Court of the Hawaiian Islands rendered May 4, 1897 (11 Hawaii, 47), and by said Irene Ii and her husband, Charles A. Brown, conveyed to Henry Holmes, as trustee, by deed dated July 2, 1897, and by Holmes conveyed to said John Ii Estate, Limited, by deed of July 9, 1897, and confirmed to said estate by decision of the Supreme Court of the Territory of Hawaii rendered November 21, 1903 (15 Hawaii, 308); that the right of the John Ii Estate, Limited, to the money was res judicata; that all the other defendants were estopped to claim the same; that no person had any interest, right, or claim in said money.

In the claim of Francis Hyde Ii Brown it was alleged that the land was formerly owned in fee by John Ii, since deceased; that it was devised by will to his daughter Irene for life, and upon her death to her children, or, in the event of her not having borne children, then to her mother, Maraea Ii, if then living, and, if not, then to the testator's brother J. Komoikehuehu; that thereafter Irene Ii became the wife of C. A. Brown, and at the time of filing the claim was then the wife of C. A. Holloway; that as a result of Irene Ii's marriage with C. A. Brown there were three children, namely, the claimant, Francis Hyde Ii Brown, George Ii Brown, one of the respondents, and Bernice Ii Brown, who died in infancy; that by reason of these facts claimant became the owner of an undivided interest in said land in fee simple, and was entitled to a one-third share or interest in said fund, subject to the life interest therein of Irene Holloway, or the John Ii Estate, as the assignee of her life interest. And, further answering the claim of the John Ii Estate, claimant alleged that the opinion of the Supreme Court of Hawaii, rendered on May 4, 1897 (11 Hawaii, 47), was not binding upon claimant and did not affect his title to said land nor his right or claim in or to said fund for the following, among other, reasons: (1) That the cause in which said opinion was rendered was a suit in equity, and the opinion was rendered upon questions reserved in said suit by the circuit judge before whom the suit came on for hearing; but the said circuit judge was without authority of law or jurisdiction to so reserve said questions in said suit. (2) That the said Supreme Court had no jurisdiction or authority to hear, determine, or otherwise pass on the questions so reserved as aforesaid. (3) That the said Supreme Court, at the time of the rendition of said opinion, was composed or constituted of Associate Justice Whiting, of the court, and two members of the bar of the court, who sat as substitute justices in the cause at the request of the said associate justice; but that the request was made without any right or authority of law, the court as so composed and constituted was not a legally constituted court, and its opinion was without legal effect. (4) That the claimant was not a party to said suit. (5) That the purported attempt of A. F. Judd to represent the claimant in said suit as his next friend was illegal, null, and void, in that said Judd was at the same time acting, or purporting to act, as the next friend of claimant's mother, whose interests in said suit were adverse to claimant's interests therein on the question as to the nature of the estate in said land devised to her by said will. (6) That the jurisdiction of the Supreme Court, if it ever acquired jurisdiction, in said suit, was, under the pleadings, limited to the determination of the question whether any trust was then in existence concerning the property devised by the will, and that its jurisdiction ended upon its determining that no such trust existed. (7) That no judgment, order, or decree was ever made in any of the aforesaid proceedings in said suit in equity, pursuant to the opinion of the Supreme Court, or otherwise, adjudicating or determining the rights of claimant under said will in any of the property therein devised.

Further answering the claim of the John Ii Estate, Limited, the claimant alleged that the opinion of the Supreme Court of the Territory of Hawaii, rendered on November 21, 1903 (15 Hawaii, 308), did not adjudicate or determine claimant's right or title in any of the property devised by the will of said John, deceased, and did not affect the claimant's right of claim in or to said fund in court.

In the statement of claim of George Ii Brown, impleaded as a minor, it was alleged that he arrived at the age of majority October 18, 1907, and, alleging the prior proceedings substantially as did Francis Hyde Ii Brown, claimed an undivided interest in the land in fee simple, and entitled to a one-third share or interest in the fund, subject to the life interest therein of Irene Ii Holloway.

To fully understand the questions at issue between these claimants as to their alleged right to the fund in court, it will be necessary to state some of the material facts in the case in their chronological order. In doing so we will abbreviate names, as was done by the court below. The Estate of John Ii, Limited, will be referred to as the "Estate"; the person named

as Irene Ii Brown, and subsequently as Irene Ii Holloway, will be referred to as "Irene"; the person named George Ii Brown will be referred to as "George"; the person named as Francis Hyde Ii Brown will be referred to as "Francis"; and these two, when mentioned collectively, will be referred to as "the children."

On May 2, 1870, John Ii, a Hawaiian, a resident of the Island of Oahu, Hawaiian Islands, died leaving a large estate in real and personal property, situated on the Island of Oahu and elsewhere in the Hawaiian Islands, which he devised by will (the original of which is in the Hawaiian language) duly admitted to probate in the Supreme Court of the Hawaiian Islands on the 10th of June, 1870. A translation of the will was agreed upon by the parties to the action, the material portions of which are:

" * * * All my property, both real and personal, shall descend to my heirs who are mentioned below, as follows:

"First. Irene Haalou Ii, my own daughter, is the first heir as follows: [Here follows a description of certain lands, including the land condemned in this case.] And one-half of all my personal property.

"Second. My wife, Maraea Ii, is my second heir. [Here follows description of certain lands.] And one-half of all my personal property; and in case my wife marries again this land shall descend to my daughter; she cannot bequeath to any one.

"Third. My brother, J. Komoikehuehu, is the third heir. [Here follows a description of certain lands.] Those are the lands I bequeath to him.

"Fourth. My interest in the land of G. Naaihelu, my deceased younger brother, is for his widow Kamealani.

"Fifth. My land [here follows a description of certain lands] is for A. F. Judd, and that is his land that I bequeath to him.

"By this will I have appointed and I do hereby appoint J. Komoikehuehu, A. F. Judd, they both to be the executors and guardians of the person and property of my daughter the first devisee mentioned in this will.

"All the income from the lands that are leased and all other receipts from all the lands of my daughter, they two alone shall have the sole care of it until she becomes of age or *has children of her own;* they shall be the executors during the lifetime of my daughter and her children in accordance with my wishes as expressed in this will, and they shall receive compensation, the same as provided by law. * * *

"And the first fruits received from the lands of my daughter, that is, the money received, there shall be taken therefrom ten cents from each dollar which is set apart as an offering to God's kingdom, the same as I have done, and my executors are to carry out this request of mine.

"And further, if my daughter should die having borne children, then the property shall descend to her children, and if she should die without having had any children the property shall descend to her own mother, and if she should be dead then the property shall descend to my brother, J. Komoikehuehu."

Irene Ii Holloway is the daughter of John Ii, deceased, and is the Irene Haalou Ii named in John Ii's will. Irene married Charles A. Brown September 30, 1886, and three children were born of the marriage—George Ii Brown, of full legal age on October 18, 1907; Francis Hyde Ii Brown, a minor; and Bernice Ii Brown, who died in infancy in 1894. Irene had no other children. In 1898 a divorce separated Irene and Charles A. Brown, and Irene afterward married Carl S. Holloway.

On July 2, 1897, Irene and Charles A. Brown conveyed their interest in the lands to Henry Holmes, as trustee, who, in the same month, conveyed to a corporation, the John Ii Estate, Limited, the plaintiff in error here. The stock of this corporation was issued, one-third to Irene, one-third to Charles A. Brown, and one-third to Henry Holmes, trustee for George Ii Brown and Francis Hyde Ii Brown, the surviving Brown children, in equal shares. The shares held by Henry Holmes as trustee for George Ii Brown have been turned over to him since he attained his majority; and he has, since his majority, received and accepted the monthly dividends paid upon his shares.

We come now to the first case in the courts of Hawaii where this estate has been a subject of controversy.

On April 7, 1894, after the marriage of said Irene with C. A. Brown, and the birth of her three children, A. F. Judd, one of the executors of the last will of John Ii, deceased, and one of Irene's guardians, after being discharged as such guardian, brought a bill in equity before a circuit judge in the circuit court of the First judicial circuit, territory of Hawaii, for himself and as next friend of the said Irene and her surviving children, against C. A. Brown, to declare and execute a trust and for an accounting, upon the proper construction of the will of John Ii, deceased.

The bill included a prayer that the court construe and determine the relative rights of Irene and her children and her husband, C. A. Brown, in and to said estate under said will. The defendant Brown did not plead to this bill, but appeared specially for the purpose of asking the court to dismiss the bill, on the ground that the plaintiff Irene had filed her discontinuance of the suit. The bill appears not to have been satisfactory to Irene, and by her attorneys, Hatch & Magoon, she asked leave of the court by motion to discontinue all proceedings in the cause. After some controversy, an amended bill was substituted for the original bill on August 10, 1894, with the same parties as plaintiffs and defendant, except that Sanford B. Dole, administrator with the will annexed and guardian, was joined therein as an additional party plaintiff.

In the original bill it was alleged, in substance, that John Ii died in 1870, leaving a large estate in the Islands, which he devised by a will duly admitted to probate, a copy of which was attached; that Judd and J. Komoikehuehu were duly appointed executors of the will and guardians of the personal property of Irene, then aged about nine months, and duly qualified as such executors and guardians; that in 1875 said J. Komoikehuehu resigned his trust, and Sanford B. Dole was duly appointed in his place; that thereafter, and until November 13, 1886, Judd and Dole performed their duties as such executors and guardians, and on that date applied to the court for their discharge as guardians, on the ground that their powers had ceased to be operative because of the marriage of Irene to C. A. Brown; that they were never discharged as executors of the will; that Judd, upon being appointed executor and guardian, received from the court an instrument purporting to be a true and correct copy of the will of John Ii, upon which he exclusively relied in determining his powers and duties; that in the copy of the will the words, "O laua no na hooko kauoha i ka wa e ola ana kuu kaikamahine a i kana mau keiki," meaning, "They two shall be the executors during the lifetime of my daughter and her children," were omitted; that Judd and Dole were, therefore, not fully advised of the true intent of the will, and supposed that no trust was created by said will that would not terminate when Irene attained her majority or married; that upon their discharge the guardians delivered to Irene and her husband all the property devised by the will to her; that by the terms of the original will Judd and Komoikehuehu were constituted the trustees of the property during the life of Irene, whether married or not. Judd, as sole surviving trustee named in the will, submitted the construction of the will to the adjudication of the court, and asked that his duties and obligations as surviving trustee be authoritatively defined; that C. A. Brown had possession of the property and claimed the personal right to all rents, issues, and profits, and the exclusive control and management thereof; that Brown denied the existence of any trust, refused to allow Judd to take possession of the property, and refused to account to any one for the rents, issues, or profits; that Brown had wasted, squandered, and mismanaged the estate, and had incurred large liabilities, which he illegally sought to make a charge upon the estate; that Brown, at the time of his marriage with Irene, had full knowledge of the contents of the will; that he had failed to make any settlement upon his wife, and failed to make adequate or proper provision for her; that, unless restrained, Brown would further waste and squander the estate, and do irreparable injury thereto; that said Irene desired the court to set apart a reasonable allowance for her out of the income of the estate to support herself and two children; that

under the will provision was made for the children of Irene, and for the support of Irene; that it was important to obtain a construction of such provisions, and the relative rights under the will of such children and Irene, and Brown, in and to the estate, and to the income thereof; and to that end complainants prayed that the terms and provisions of said will and the duties and obligations imposed thereunder upon the said A. F. Judd as aforesaid be defined and determined, and that the said Judd be reinstated as trustee.

The amended bill followed in the main the original bill, but omitted the allegations that Brown had wasted, squandered, and mismanaged the estate, and incurred liabilities which he illegally sought to make a charge on the estate; that, at the time of his marriage with Irene, Brown had full knowledge of the contents of the will; that Brown had failed to make any settlement upon his wife, or to make other adequate provision for her; that, un-. less restrained, he would further waste the estate; and that Irene desired an allowance for the support of herself and her children.

The prayer of the original bill that the court construe and determine the relative rights of the children, George and Francis, and the mother, Irene, and her husband, in and to the estate, was omitted, and in place of it was the prayer "that the terms and provisions of said will, and the duties and obligations imposed thereunder upon the said A. F. Judd and S. B. Dole as aforesaid, be defined and determined,  *  *  *  and that the said A. F. Judd and S. B. Dole be reinstated as executors and trustees of said will and estate." The amended bill was signed by A. F. Judd and Sanford B. Dole, with the name of counsel typewritten as before.

To the amended bill Brown answered that he had possession, management, and control of the estate "in accordance with the rights and obligations imposed upon him as her [Irene's] husband," and he pleaded that Irene had an estate in fee simple to the lands in controversy, denied the existence of the alleged trust, other than one of guardianship during the minority of Irene, and denied that the will made any provision for the children, except in the contingency of the death of Irene prior to the death of the testator.

On October 24, 1895, a hearing was had before Circuit Judge Cooper, who resigned his office before reaching a decision, and on April 16, 1896, the matter came up before Judge Perry, of the same circuit, who on the 16th of April, 1896, reserved certain questions for the consideration of the Hawaiian Supreme Court as follows: (1) Was a trust created in the property devised to Irene Ii by the will of her father, John Ii? (2) If such a trust was created, is the trust still in force, Irene having married, attained majority, and had issue of such marriage, which issue still survives? (3) If such a trust still exists, is the interest of Irene Ii Brown under the same absolute, or for life only? (4) If such a trust still exists, is it such a trust that the court will, upon the proper motion, order an immediate conveyance of the property to Irene Ii Brown? (5) Has Irene Ii Brown a fee-simple title in said property, or is her estate one for life only? (6) Was an estate in perpetuity created by said will, and, if so, was its effect to vest the estate absolutely in Irene Brown? (7) If there are any remainders in said property, are they vested or contingent, and in what person? (8) What legal and adequate estates have the several parties plaintiff and defendant under the will of John Ii and the circumstances shown by the pleadings and evidence?

Chief Justice Judd and Justice Frear being disqualified to sit in the case, Justice Whiting, the remaining justice of the Supreme Court, requested W. R. Castle and L. A. Thurston, members of the bar, to sit with him in hearing and determining the case. Thurston being compelled to leave the Islands, Mr. Paul Neumann, another member of the bar, was substituted in his place, and after a hearing wrote the opinion of the Supreme Court.

The court answered the first question in the affirmative, holding that a trust in the property devised to his daughter was created by the will of the testator; that as to the second question, upon the marriage and attaining majority of the devisee, the trust became extinct; and that, as to the fifth question, the devisee, Irene, had an estate in fee simple in the property devised to her by her father's will. It was considered by the court that it was unnecessary to decide the other questions, in view of the rulings upon the

questions answered. No further proceedings appear to have been taken in the case. The case was not remanded to the circuit court, and no decree was entered in either court.

We come now to the second case where this estate has been a subject of controversy in the Hawaiian courts.

On the 27th of January, 1903, a bill in equity to declare a trust and for relief was filed in the same circuit court by A. F. Judd, as next friend of George and Francis, minors, against C. A. Brown, John A. Magoon, and Irene. The bill, after alleging the death of John Ii on the 2d day of May, 1870, possessed of an estate in fee of certain lands and personal property, alleged that he left a last will and testament, which was admitted to probate on the 10th day of June, 1870, and that the said will directed that if Irene should die, having borne children, the property should descend to her children, but that she should be the first heir, meaning and intending thereby that during her life she should have the use and benefit of the said property, and that her children, by virtue of the will, were the absolute owners in fee of the same, subject only to their mother's life estate; alleged the marriage of Irene to Charles A. Brown, and the proceedings in court hereinbefore referred to, relating to the estate of John Ii, deceased, the execution of a deed of conveyance on July 2, 1897, by Irene and Charles A. Brown of the said property, in trust, for the organization of a corporation to hold the same and to deliver one-third of the shares thereof to Irene, one-third to Brown, and a third to plaintiffs, which corporation was organized under the name of the John Ii Estate, Limited, and delivery of shares made accordingly, except that one share of those to be issued to Brown was caused by him to be issued in the name of J. A. Magoon, one of the defendants thereto. It is alleged that the defendants held such shares subject to a trust that upon Irene's death the same should be assigned to plaintiffs. It is alleged that on the 27th day of May, 1898, the said Irene was granted an absolute divorce from the defendant Charles A. Brown. The bill recites the proceedings in the first case, but alleges, among other things, that no decree had been made or entered in that case; that in none of the proceedings in that case, although plaintiffs had interests conflicting with their mother, did they have separate counsel; that the same attorneys represented them, and also their mother; that there had been no legal adjudication of the questions involved; that no court organized as required by the Constitution of the Republic of Hawaii had obtained appellate jurisdiction of any of the reserved questions in that case; that the jurisdiction of the Supreme Court concerning the construction of said will (if it ever existed) ended upon its determining that no trust was in existence concerning said property; that there was no statutory or other authority to reserve questions of law in said cause for the Supreme Court, and that the Supreme Court had no jurisdiction of said cause. The bill prayed, among other things, for an order restraining the defendants from selling, pledging, or otherwise disposing of the shares held by them as aforesaid, and that they be decreed to assign the shares held by them to a trustee in trust during the life of Irene, to pay the income thereof to those entitled thereto, and at her death to assign all of the said shares to the plaintiffs absolutely, and for general relief.

To this bill Irene Holloway answered, admitting the material allegations of the bill, except the allegation that the said John Ii meant and intended by his said last will that the defendant Irene should have the use and benefit of said property during her lifetime only, and she alleged that she was given in and by said will the said property in fee simple. The defendant Magoon demurred to the bill generally. The defendant Brown demurred on general and special grounds—among others, on the ground that there was another suit pending, in which all necessary proceedings had been taken, save alone the formal entry of a decree, and that it did not appear that any of the property or estate of the plaintiffs was conveyed to said corporation, either by Irene or C. A. Brown, or by any persons purporting to act in their behalf. The demurrers were sustained, on the ground that the deed of conveyance referred to, which was made a part of the bill, did not convey, or purport to convey, the estate of the plaintiffs in the property.

The plaintiffs thereupon amended their bill by adding averments of inten-

tion on the part of the grantors of the said deed of conveyance to convey to trustee for the organization of a corporation the fee simple of the lands devised by the will to the plaintiffs, and that the ownership in fee simple in such lands was claimed and exercised by the corporation by virtue thereof; that the defendants claimed that the proceedings and decision of the Supreme Court were conclusive upon the plaintiffs, and forever barred them from setting up any title under the will to the lands, and that by reason of the decision of the Supreme Court they have been deprived of trustees as provided by the will for the protection of their interests as remaindermen; and that unless the invalidity of said proceedings and decisions, and also the plaintiff's titles therein claimed, be declared by the court, a cloud will rest upon their title, and their rights as such remaindermen may be subject to costly and difficult litigation. The prayer of the amended bill was for such other, further, and appropriate relief, orders, and decrees as the nature of the case may require, and, specifically, that a declaratory decree be made declaring that the proceedings, decision, and conveyance herein mentioned are invalid and of no effect as against the plaintiffs.

The bill as amended was answered by Irene Holloway and demurred to by Magoon and Brown on substantially the same grounds as before, and the demurrers were sustained—the court holding that the new allegations did not take the case out of the rules set out in the former decision, unless the bill was good as a bill quia timet; that, it being apparent from the pleadings that the plaintiffs were not in possession of the land, they had their remedy in the statutory action to quiet title. A decree was made dismissing the bill and giving costs to the defendants. The plaintiffs appealed to the Supreme Court, where the decree was affirmed and the case remanded to the circuit judge.

On the trial of the present case in the court below the proceedings in these two cases in the courts of Hawaii were introduced in evidence and constituted substantially an agreed statement of facts, upon which the court was called upon to determine the rights of the claimants to the fund in court. In passing upon the questions involved the court rendered an elaborate opinion upon the terms of the will, the character of the devise and rule of property, and the effect of the proceedings in the courts of Hawaii upon the distribution of the estate in controversy, and thereupon it entered its judgment and decree that the land condemned was owned in fee simple by one John Ii; that said land was devised by the last will and testament of said John Ii to his daughter, Irene Ii, for her life, remainder in fee to her children; that said Irene Ii married C. A. Brown, and had three children born to her, namely, George Ii Brown, Francis Hyde Ii Brown, and Bernice Ii Brown; that said Bernice Ii Brown died in infancy; that said Irene Ii Brown and C. A. Brown thereupon inherited all of the property of said Bernice Ii Brown; that Irene Ii Brown and C. A. Brown thereafter conveyed all their interests in said land to said John Ii Estate, Limited; that said Irene Ii Brown and C. A. Brown were thereafter divorced, and said Irene Ii Brown thereafter married C. S. Holloway; that said John Ii Estate, Limited, is entitled during the life of said Irene Ii Holloway to the net annual income from said sum of $10,000; that after the death of said Irene Ii Holloway said sum of $10,000 belongs absolutely in equal shares to said George Ii Brown, his heirs or assigns, and Francis Hyde Ii Brown, his heirs or assigns, said John Ii Estate, Limited, as the assignee of the heirs of said Bernice Ii Brown, and any other child or children that may hereafter be born to said Irene Ii Holloway.

From this decree the present appeal has been prosecuted.

Ruben D. Silliman, of New York City, Thomas G. Crothers and George E. Crothers, both of San Francisco, Cal., and Philip L. Weaver, of Honolulu, Hawaii (Choate & Larocque, of New York City, and John Alfred Magoon, of Honolulu, Hawaii, of counsel), for plaintiffs in error.

F. E. Thompson and E. M. Watson, both of Honolulu, Hawaii, for defendants in error.

Before GILBERT, ROSS, and MORROW, Circuit Judges.

MORROW, Circuit Judge (after stating the facts as above). The plaintiff in error, the John Ii Estate, Limited, claims the whole fund in court: (1) By deed through Irene, who was the daughter of John Ii, deceased, and was named as a devisee in her father's will, and who, claiming an estate in fee simple under the will, deeded the lands condemned to the John Ii Estate, Limited; (2) by prior adjudication in the Hawaiian courts. The defendants in error, Francis and George, children of Irene, denying the fee-simple estate of their mother, and admitting only a life estate in her, claim an interest in the fund by: way of remainder under the will of John Ii deceased. The court below held that the devise to Irene was for life, that the children had an interest in the fund as claimed by them, and that there had been no adjudication in the courts of Hawaii foreclosing that interest. The court entered judgment accordingly. Was the court in error in entering this judgment?

The primary question is whether the devise to Irene was in fee simple or for life. To determine this question it will be necessary to carefully examine the provisions of the will of John Ii. The original of this will is in the Hawaiian language, and for convenience the material parts as translated and agreed to by the parties will be restated. The controversy as to the intention of the testator with respect to the devise made to his daughter, Irene, turns upon the construction of the clauses and paragraphs in the will which for the purpose of easy reference are placed in italics, and one clause where the agreed translation is in dispute is placed in small capitals:

"*All my property, both real and personal, shall descend to my heirs who are mentioned below, as follows:*

"*First.* Irene Haalou Ii, my own daughter, is the *first heir* as follows: [Here follows a description of certain lands, including the land condemned in this case.] And one-half of all my personal property.

"*Second.* My wife, Maraea Ii, is my *second heir*. [Here follows a description of certain lands.] And one-half of all my personal property; and in case my wife marries again this land shall descend to my daughter; she cannot bequeath to any one.

"*Third.* My brother, J. Komoikehuehu, is the *third heir*. [Here follows a description of certain lands.] Those are the lands I bequeath to him.

"*Fourth.* My interest in the land of G. Naaihelu, my deceased younger brother, is for his widow Kamealani.

"*Fifth.* My land [here follows a description of certain lands] is for A. F. Judd, and that is his land that I bequeath to him.

"By this will I have appointed and I do hereby appoint J. Komoikehuehu, A. F. Judd, they both to be the executors and guardians of the person and property of my daughter, the first devisee mentioned in this will.

"All the income from the lands that are leased, and all other receipts from all the lands of my daughter, *they two alone shall have the sole care of it until she becomes of age* OR HAS CHILDREN OF HER OWN; *they shall be the executors during the lifetime of my daughter and her children in accordance with my wishes as expressed in this will,* and they shall shall receive compensation the same as provided by law. * * *

"And the first fruits received from the lands of my daughter, that is, the money received, there shall be taken therefrom ten cents from each dollar which is set apart as an offering to God's kingdom, the same as I have done. And my executors are to carry out this request of mine.

"*And further, if my daughter should die having borne children, then the*

*property shall descend to her children, and if she should die without having had any children the property shall descend to her own mother, and if she should be dead then the property shall descend to my brother, J. Komoike-huehu.*"

This will is dated the 28th day of April, 1870. The testator died on the 2d day of May, 1870. The daughter, Irene, was then aged about nine months.

[1] The disputed clause in the will is indicated by the words in small capitals in the paragraph reading as follows:

"All the income from the lands that are leased, and all other receipts from all the lands of my daughter, they two alone shall have the sole care of it until she becomes of age OR HAS CHILDREN OF HER OWN; they shall be the executors during the lifetime of my daughter and her children in accordance with my wishes as expressed in this will."

These words, "OR HAS CHILDREN OF HER OWN," had been translated from the original words, "a hanau paha kana mau keiki." Judge Dole, presiding in the court below, who is himself familiar with the Hawaiian language, did not consider himself bound by the agreed translation of these words, and with the consent of counsel on both sides heard the testimony of a number of experts in the Hawaiian language as to the meaning of these words, and while several of the experts approved the translation, "OR HAS CHILDREN OF HER OWN," two of these experts, who appear to have had superior knowledge of the Hawaiian language and its construction, translated the words into English as follows: *"And in the event of her giving birth to children."* And a majority of the experts admitted that the words in the relation in which they stood in the paragraphs were capable of such translation, and such a translation was required to make the clause harmonize with the remaining clauses of the paragraph. Judge Dole accordingly found that with the translation, "and in the event of her giving birth to children," the repugnance and inconsistency in the terms of this clause, taken in connection with the preceding and succeeding clauses of the paragraph, were removed, and the whole paragraph made to harmonize with the obvious and untechnical meaning of the final provision of the will. This translation was therefore accepted. The whole paragraph, with this new translation, reads as follows:

"All the income from the lands that are leased, and all other receipts from all the lands of my daughter, they two alone shall have the sole care of it until she becomes of age, and in the event of her giving birth to children they shall be the executors during the lifetime of my daughter and her children in accordance with my wishes expressed in this will."

The final provision of the will, referred to by Judge Dole, is as follows:

"And further, if my daughter should die having borne children, then the property shall descend to her children."

The original translation rendered the whole paragraph contradictory in terms and inconsistent in purpose. By its terms the testator appointed two executors, to have the sole care of the income from the lands devised to the daughter until she should become of age, or al-

ternately until she had children of her own. Then it would follow as a legal consequence that their care of the estate of the daughter would cease; but this was not the intention of the testator, for he immediately proceeded to provide otherwise, and in the very next clause he provided that the executors should be the executors during the lifetime of his daughter and also of her children. It will not be presumed that the testator contemplated or proposed such a contradictory situation in the care and control of his daughter's estate, and this apparent repugnance and inconsistency should be avoided, if it can be done with due regard to the proper construction of the language contained in the will. This repugnance and inconsistency is avoided by a translation which appears to be not only admissible, but perfectly reasonable, and wholly consistent with the other language of the will and the plain purpose and intent of the testator.

In view of the fact that the judge of the court below is himself a Hawaiian scholar, that he heard the expert witnesses, and was able to judge of their knowledge and skill as experts in the use of the Hawaiian language, we shall accept the translation of the clause in question adopted by the court below as the correct translation, and' as expressing the true purpose and intent of the testator.

[2] We come now to the question: What estate in the land condemned in this case did the testator devise to Irene?

Plainly, if we are to be guided by the provisions of the will we have been considering, it was a life estate; that is to say, she was to have the income from the lands mentioned in the will during her lifetime, and if she had children then the property should descend to her children, and if she should die without having had any children then the property should descend to her own mother, and if she should be dead then the property should descend to the testator's brother. This is the positive direction of the last clause of the will. Now, while the writer of this will had evidently but little technical skill in the construction of its provisions, it is clear that the instrument was intended to provide for the devise of a life estate to Irene, and not an estate in fee simple.

[3] But the plaintiff in error contends that this construction of the will is inadmissible; that the devise to Irene as the "first heir" was a gift in fee under the Hawaiian law, and that when a fee is once given it cannot be taken away, except by language that shows an unmistakable intention on the part of the testator so to do. It may be conceded that if there had been in the first part of the will a clear, certain, and definite devise to Irene of an absolute estate in fee simple, it could not afterwards be taken away from her in the same instrument, except by language showing in at least as clear and unmistakable terms the intention of the testator so to do; but has the testator in the first part of this will granted to Irene an estate in fee simple in such clear, certain, and definite terms as to override the subsequent provisions describing a life estate? We think not. The first mention of a devise to Irene is plainly uncertain and indefinite as to the character of the estate devised to her, and it is only by reference to the subsequent provisions of the will that we find the

estate described in such clear and definite terms that we can understand its character and quality. The designation of Irene as the "first heir" does not necessarily mean that the devise to her is of an estate in fee simple, and it is evident that the testator did not intend that his will should be so understood. The first declaration is:

"All my property, both real and personal, shall descend to my heirs who are mentioned below."

The word "heirs" as here used is manifestly without legal significance in describing the estate devised. This is apparent from the terms of the other devises. The testator's wife is designated as his "second heir"; but she is clearly not given an estate in fee simple in land, since the estate is specifically limited by the provision:

"In case my wife marries again the land shall descend to my daughter; she cannot bequeath to any one."

On the other hand, while A. F. Judd is not designated in the body of the will as an "heir," he is plainly given land in absolute fee simple in the provision:

"My land [describing it] is for A. F. Judd, and that is the land I bequeath to him."

Moreover, as pointed out by the court below, the original Hawaiian word "hooilina," which is translated "heir" in the first, second, and third bequests, is translated "devisee" in the clause appointing the executors and guardians of the daughter, who is referred to as the first "devisee mentioned in the will," thus making the word "heir" and "devisee" in the translation synonymous. The word "heir" could not, therefore, have been intended as descriptive of the estate devised, but of the person to whom the devise was made; and, being thus indefinite and uncertain as to the estate devised, resort must be had to other portions of the will to ascertain the intention of the testator.

The plaintiff in error cites the late case of Simerson v. Simerson, 20 Hawaii, 57, as declaring a rule of construction applicable to this case. In that case the grant was by deed, and the granting clause was as follows:

"I do make, and by this give, sell, and convey absolutely unto Mary Nanea Simerson aforesaid, and her heirs, forever, that certain piece of land," etc.

In a subsequent paragraph in the deed it was provided:

"This conveyance is under the conditions mentioned below, viz.: (1) That Mary Nanea Simerson aforesaid cannot sell this land nor mortgage it. (2) She is to pay the mortgage existing upon the said land, and all expenses pertaining to the release of said mortgage. To have and to hold the said piece of land, with all rights and benefits thereon, to Mary Nanea Simerson aforesaid immediately after our death; and after her death the said land is to descend to her child now being * * * and other children which she may have hereafter, and to their heirs and assigns, forever."

Here is a deed conveying land absolutely to the grantee and her heirs, forever, in the common-law form of a grant in fee simple. There is nothing uncertain or indefinite about the estate granted. On the contrary, it is perfectly certain, clear, and definite as the grant of an absolute fee-simple title, and if subsequent conditions in the

deed are found in conflict with this grant the latter must yield to the former; but the court found that the last condition in the original Hawaiian language was not so much in conflict with the absolute grant as appeared by the English translation. The court, referring to the original deed and to the last condition in the deed, said:

"This is not a remainder, but an expression of the grantor's wish or intention that the inheritance which he had given to his daughter should descend from her to his grandchildren. There is no Hawaiian word which is the exact equivalent of 'condition'; the word 'kumu,' translated 'conditions,' used in the version, meaning 'grounds' or 'considerations.' Moreover, the Hawaiian language does not distinguish between the imperative mood and the future tense. The deed, then, would readily mean to the Hawaiian mind that the grantor gives the land to his daughter absolutely, and to her heirs and assigns, forever, considering that she will [or shall] not sell or mortgage it, and will pay off its mortgage, and that at her death it will [or shall] descend to her children."

What the court did in this case was what the court below did in the present case. It gave a critical examination to the translation of important words, and then, looking at the whole instrument, without reference to formal divisions, ascertained the intention of the testator, following a rule in cases cited by the court in Bodine's Administrators v. Arthur, 91 Ky. 53, 14 S. W. 904, 34 Am. St. Rep. 162; Beecher v. Hicks, 75 Tenn. 207; Fogarty v. Stack, 86 Tenn. 610, 8 S. W. 846; Horn v. Broyles (Tenn. Ch.) 62 S. W. 297; Prior v. Quackenbuch, 29 Ind. 475; Clapp v. Byrnes, 3 App. Div. 284, 38 N. Y. Supp. 1063; Barnett v. Barnett, 104 Cal. 298, 37 Pac. 1049; Flagg v. Eames, 40 Vt. 16, 94 Am. Dec. 363; Rines v. Mansfield, 96 Mo. 394, 9 S. W. 798. This was the rule followed by the court below in the present case, and is the generally accepted rule in this country, and has been followed in the Hawaiian courts.

[4] It is a fundamental rule in the construction of wills that, if possible, effect be given to every word and every clause in a will, and the several clauses should be made to harmonize with the general intent of the testator, as it may be gathered from a consideration of the whole instrument. Zupplein v. Austin, 6 Hawaii, 8, 10; Paaluhi v. Keliihaleole, 11 Hawaii, 101, 103; Fitchie v. Brown, 18 Hawaii, 52, 71; 30 Am. & Eng. Ency. 644. The first and great rule in the exposition of wills, to which all other rules must bend, is that the intention of the testator, expressed in his will, shall prevail, provided it be consistent with the rules of law. Smith v. Bell, 6 Pet. 68, 8 L. Ed. 322; Adams v. Cowen, 177 U. S. 471, 475, 20 Sup. Ct. 668, 44 L. Ed. 851; Anderson v. Messinger, 146 Fed. 929, 938, 77 C. C. A. 179, 7 L. R. A. (N. S.) 1094; 30 Am. & Eng. Ency. 661.

In King v. King, 215 Ill. 100, 110, 74 N. E. 89, 92, the question in the construction of a will was almost identical with the question under consideration. The court said:

"If an estate is devised to a person without the use of such words of inheritance, the devisee will take in fee simple, unless a less estate is limited by express words in a subsequent part of the will, or by construction or operation of law. [Citing cases.] The question then arises whether the fee-simple estate thus devised to the plaintiff in error was reduced to an estate less than a fee by any of the clauses of the will following and sub-

sequent to the first clause. * * * By the use of the words, 'and in case of the death of daughter, and she left one or more children, then the property goes to them when of age,' it was clearly the intention of the testator that the daughter, the present plaintiff in error, should have the life estate only in the property, and that the remainder, after the expiration of the life estate, should go to her children."

Under this rule, supported by numerous authorities in addition to those cited, we are of the opinion that the terms of the will in this case show that it was the intention of the testator to devise the land in question to his daughter, Irene, for life, with the remainder in fee to her children.

It is next contended by the plaintiff in error that this controversy is res judicata; that in two prior Hawaiian cases—Brown v. Brown, 11 Hawaii, 47, and Brown v. Brown, 15 Hawaii, 308—the question involved in this case was litigated and determined adversely to the defendants in error.

The first case was a suit in equity brought in the circuit court of the First circuit of the Republic of Hawaii in 1894 by Irene Haalou Ii Brown, a married woman, and George Ii Brown and Francis Hyde Ii Brown, minors, by their next friend, A. D. Judd and A. F. Judd, against Charles Brown, to declare and execute a trust and for an accounting. The bill was signed by "A. F. Judd," and in the margin were typewritten the names of "Carter & Carter" and "W. A. Kenney" as attorneys for plaintiffs. The suit had its origin in this situation: In the will of John Ii, A. F. Judd and J. Komoikehuehu were named as executors and guardians of the person and property of the daughter, Irene. John Ii died in 1870, leaving a large estate and the daughter surviving. The will was admitted to probate, and Judd and Komoikehuehu appointed executors of the will and guardians of Irene. In 1875 Komoikehuehu resigned, and Sanford B. Dole was appointed in his place, and thereafter performed their duties under the will until 1886, when Irene married C. A. Brown. Thereupon Judd and Dole applied to the court to be discharged as guardians, on the ground that their powers as guardians of Irene had ceased upon her marriage to Brown. They were, however, never discharged as executors of the will. When Judd was appointed executor and guardian, he received from the court what purported to be a true and correct copy of the will, upon which he states he exclusively relied in determining his powers and duties. In the the copy of the will furnished Judd the following words in the Hawaiian language were omitted:

"O laua no na hooko kauoha i ka wa e ola ana kuu kaihamahine, a i kana mau keiki."

These words are translated:

"They shall be the executors during the lifetime of my daughter and her children."

By the omission of these words it is alleged that Judd and Dole were not fully advised of the true nature and intent of the will, and supposed that no trust was created by the will that would not terminate when Irene reached her majority or was married. Learning

of this omission, and believing that the original will created a trust during the lifetime of Irene and her children, Judd, as sole surviving trustee, brought the first suit against Brown in 1894 for the purpose of submitting the construction of the will to the adjudication of the court. The suit was brought against Brown, because it was alleged he had secured possession of the property and claimed the right to all of its rents, issues, and profits, and its exclusive control and management. The bill included a prayer that the court construe and determine the relative rights of Irene and her children and her husband in and to said estate under the will. The defendant Brown did not plead to the bill, but appeared specially for the purpose of asking the court to dismiss the bill, on the grond that the plaintiff, Irene, had filed her discontinuance of the suit. The bill appears not to have been satisfactory to Irene, for she asked leave of the court to discontinue all proceedings in the cause. After some controversy, an amended bill was substituted for the original bill on August 10, 1894, when the same parties plaintiff and defendant, except that Sanford B. Dole was joined as an additional party plaintiff, and the prayer of the original bill that the court construe and determine the relative rights of the children, George and Francis, and the mother, Irene, and her husband, and the defendant Brown in and to the estate, were omitted, and in place of it was the prayer that the terms and provisions of said will and the duties and obligations imposed thereunder upon the said A. F. Judd and S. B. Dole be defined and determined. The answer of Brown in substance denied the trust, other than guardianship during the minority of Irene.

After proceedings before the circuit court of the Hawaiian Islands, Judge Perry, who at the time was judge of the court, reserved certain questions for the consideration of the Hawaiian Supreme Court. These questions have been set forth in the statement of facts and need not be restated. In brief, they included the question at issue under the amended bill; that is to say, whether a trust was created by the will of John Ii in the property devised to his daughter, Irene, and, if such a trust was created, was the trust still in force, Irene having married and had issue of the marriage, which still survived? The questions also included in different forms of statement the question contained in the original bill, and which had been omitted from the amended bill; that is to say, what were the relative rights and interests of the parties plaintiff and defendant in the estate of John Ii under his will?

[5] It is objected that there was no authority for the reservation of these questions for the consideration of the Supreme Court; but, assuming that there was such authority, they were not reserved in the manner provided by law. The statute of Hawaii under which the judge assumed to act provides:

"Whenever any question of law shall arise in any trial or other proceeding before a circuit court the presiding judge may reserve the same for the consideration of the Supreme Court." Laws of 1892–93, c. 57, § 72.

The authority to reserve questions for the consideration of the Supreme Court is limited by this statute to questions of law. It ap-

pears from the pleadings in the case that the only question that had arisen in the case, and which it was proposed to submit to the Supreme Court, was a question of fact. The question was: What was the intention of the testator with respect to the trust he had created in the property he had devised to his daughter, Irene? The answer to this question was to be found, not in the determination of a question of law, but from an inspection of the original will ascertain whether the words, alleged to have been omitted from the copy of the will furnished the guardian, Judd, were in fact contained in the original will. It was then the duty of the court to construe the whole will etymologically and grammatically for the purpose of ascertaining the true intent and purpose of the testator in creating a trust for his daughter's estate. This was a question of fact, which, being found, enabled the court to define and determine the duties and obligations imposed thereunder upon the trustees, Judd and Dole. There was no statute providing for the reservation of such a question, and in our opinion the court had no jurisdiction to reserve such a question, for the consideration of the Supreme Court.

[6] The next objection, which was that the questions were not reserved in the manner provided by law, turns upon the authority of the judge of the circuit court to reserve questions in chambers, as was done in this case. Under section 72 of the Laws of 1892, supra, the presiding judge of the circuit court is authorized to reserve questions of law for the consideration of the Supreme Court. The questions were reserved by the presiding judge of the circuit court, and, had they been questions of law, instead of questions of fact, we would have had no hesitation in holding that the judge had jurisdiction to reserve such questions for the consideration of the Supreme Court. The dictum of the Supreme Court in Booth v. Baker, 10 Hawaii, 543, 546, that there is no authority, statutory or otherwise, for the reservation of questions to that court by a circuit judge sitting in equity at chambers, is not sufficient, in our opinion, to justify this court in holding that the judge had no authority to reserve questions in chambers for the consideration of the Supreme Court, if they were otherwise within the jurisdiction of the court for such action.

The next objection relates to the question whether the Supreme Court was legally constituted for the hearing and determination of the case. The Supreme Court of Hawaii, under article 83 of the Constitution of the republic, adopted in 1894, consisted of a Chief Justice and two Associate Justices. When these questions reached the Supreme Court, it was found that the Chief Justice and one of the Associate Justices were disqualified to sit in the case. The law at that time provided that, if any Justice of the Supreme Court should be disqualified from sitting in any cause pending before the Supreme Court, his place for the trial and determination of such cause should be filled by one of the circuit judges, who had no connection with said cause, either as counsel or in his official capacity, or by any competent and disinterested member of the bar of the Supreme Court thereunto authorized by the written request of the remaining Justices. In this case, two of the Justices being disqualified, the remaining Jus-

tice requested two members of the bar to sit with him in hearing and determining the case. The question was then argued and submitted; but one of the members of the bar, who had been requested to sit in the case, being compelled to leave the Islands, another member of the bar was substituted in his place. An opinion answering the reserved questions was written by this last substituted member, was signed by the other members of the court, and filed, but no further proceedings taken in the case.

It is strenuously objected that this was not a legally constituted court, that at the time the reserved questions were certified to the Supreme Court the law provided for the filling of one vacancy only for the hearing of a cause, and that the addition of a second substituted member was in violation of the statute. The court below did not deem it necessary to pass upon this question, in view of its position on the question as to the authority of the court to reserve the questions it did for the consideration of the Supreme Court. For the same reason we do not deem it necessary for this court to pass upon this question.

[7] The next objection is that the defendants in error were not represented by counsel in the case. In the original bill the plaintiffs were Irene, the mother, the two children, represented by A. F. Judd, their next friend, and A. F. Judd. The bill was signed and verified by "A. F. Judd." The names of "Carter & Carter" and "W. A. Kinney" were appended, typewritten, as "attorneys for plaintiffs." In the amended bill Sanford B. Dole was added as one of the plaintiffs. The bill was signed by "A. F. Judd" and "Sanford B. Dole," and was verified by "A. F. Judd." The name of "W. A. Kinney" was appended, typewritten, as attorney for plaintiffs. Subsequently Carter & Carter appeared with W. A. Kinney as attorneys for plaintiffs in the case. Strictly speaking, the original bill was that of A. F. Judd, and the amended bill that of A. F. Judd and Sanford B. Dole; but, passing that objection, there was but one set of attorneys for all the plaintiffs named in each of the bills, and there was but one defendant. Were the interests of all the plaintiffs named in the bills in such accord, as against the defendant, that they could be represented by the same attorneys?

In the original bill the prayer was that Judd be reinstated as trustee, his duties and obligations defined and determined, and the relative rights of Irene and her children and her husband under the will determined. It may be assumed that the interests of all the plaintiffs were in accord with respect to the first two clauses of the prayer of the bill; but it cannot be assumed that they were in accord with respect to the last clause. The relative rights of Irene under the will were manifestly in conflict with those of her children. This bill was not satisfactory to Irene, and she asked that proceedings under it should be discontinued, and the bill dismissed. The reason for such dissatisfaction is not disclosed in the record, unless it is found in the differences in the framework and prayers of the original as compared with the amended bill.

In the amended bill the prayer is that Judd and Dole be reinstated as executors and trustees of the will and estate and that their duties and obligations under the will be defined and determined. The prayer of the original bill that the relative rights of Irene and her children and her husband be determined was omitted from the amended bill. As thus presented to the court, it might be assumed that the interests of all the plaintiffs were in accord and that they could be represented by the same attorneys; but when the circuit judge, by consent of counsel, returned to the prayer of the original bill, and brought forward the question omitted from the amended bill as to the relative rights and interests of Irene and her children, as between themselves in the estate of John Ii, deceased, and incorporated this question in different forms in the statement of reserved questions for the consideration of the Supreme Court, the case assumed an aspect in which the interests of the children were distinctly in conflict with the interests of their mother. And when the Supreme Court undertook to decide, as it did, in answer to the reserved questions, that Irene had an estate in fee simple in the property devised to her in her father's will, and that there was no vested or contingent remainder in that estate for Irene's children, the court assumed to determine a controversy between those two parties, where such conflicting interests had been represented by the same counsel. As this determination was against the interests of the children, we must hold that they were not represented by counsel, and for that reason the court never had jurisdiction over their interests in the estate.

But it may be said that the court could not determine the duties and obligations of the executors during the lifetime of Irene, without ascertaining what her estate was under the will. If this is true, and we are inclined to think it is, it determines conclusively that, in whatever aspect we view the case, the children were entitled to be represented by counsel, and, not having been so represented, they have not had their day in court, and the case is in no sense binding upon them.

[8] The next objection to the case is, we think, final and conclusive, and entirely eliminates the first case from the controversy as a judgment, and as the basis of a judgment in the second case, to which we will refer presently. The objection is that, after the opinion was filed in the Supreme Court, answering the reserved questions, no further proceedings were taken in the case. The answers to the questions were not returned to the court below, and no directions given to that court as to further proceedings, and no decree has been entered in either court in the case. The case is still pending undetermined in the circuit court, without force or binding effect upon the defendants in error. In the absence of a decree, the decision of the court is not binding. Oklahoma v. McMaster, 196 U. S. 529, 533, 25 Sup. Ct. 324, 49 L. Ed. 587; Bouldin v. Phelps (C. C.) 30 Fed. 547, 578; Springer v. Bien, 128 N. Y. 99, 27 N. E. 1076; Detroit v. R. R., 134 Mich. 11, 95 N. W. 992, 99 N. W. 411, 104 Am. St. Rep. 600; Wilson v. Hubbard, 39 Wash. 671, 82 Pac. 154; Hart v. Brierley, 189 Mass. 598, 604, 76 N. E. 286; Chicago v. Goodwillie,

208 Ill. 252, 70 N. E. 228; Child v. Morgan, 51 Minn. 116, 121, 52 N. W. 1127.

Our conclusion with respect to the first case is that neither the circuit nor the Supreme Court of Hawaii had jurisdiction over the defendants in error or the subject-matter in controversy, so far as the same related to or affected their interests in the estate, and that there has been no adjudication with respect to the same.

[9] We come, now, to the second case. That was a suit in equity, brought on the 27th day of January, 1903, in the circuit court of Hawaii, by A. F. Judd, as next friend of George and Francis, minors, against C. A. Brown, John A. Magoon, and Irene Holloway, to declare a trust and for relief. In effect, it was a suit on the part of Irene's children to establish their rights as remaindermen in the estate of John Ii, which, the theory was, had not been determined in the first case. The particulars relating to the will and estate of John Ii and the devises mentioned in said will were set forth in the bill as in the first case, together with an allegation that the devise to Irene was intended and meant for life; that her children (the plaintiffs) were the absolute owners in fee of said property, subject only to the mother's life interest. The previous litigation is referred to, and the proceedings in the first case in the Circuit and Supreme Courts of Hawaii are recited; but it is alleged that the Supreme Court was without jurisdiction to determine the rights of the plaintiffs in that case, alleging the particulars in which such jurisdiction was lacking, and that no decree was entered in the case. The bill prayed, among other things, for an order restraining the defendants from selling, pledging, or otherwise disposing of certain shares of stock held by them in the John Ii Estate, Limited, and that they be decreed to assign the shares held by them to a trustee, in trust, during the life of Irene, to pay the income thereof to those entitled thereto, and, at her death, to assign all of the said shares to the plaintiffs absolutely.

To this bill Irene Holloway answered, admitting the several allegations of the bill, except the allegation that the said John Ii meant and intended by his said last will that the defendant should have the use and benefit of said property during her lifetime only, and she alleged that by the will she was given the property in fee simple. The defendants Brown and Magoon demurred, the former on general and special grounds—among others, on the ground that there was another suit pending, referring to the first case, and alleging that all necessary proceedings had been taken, save alone the formal entry of a decree, and that it did not appear that any of the property or estate of the plaintiffs had been conveyed to said corporation, either by the plaintiffs or any person purporting to act in their behalf. The court sustained the demurrer, on the ground that the deed of conveyance referred to in the bill did not convey, or purport to convey, the estate of the plaintiffs in the property conveyed. A decree was accordingly entered, dismissing the bill, but allowing plaintiffs leave to amend.

The bill was thereupon amended, by the addition of a paragraph to the bill alleging that it was the intention and the declaration of the grantors in said deed of conveyance to convey to trustees for the

organization of a corporation the fee simple of the lands devised by the will to the plaintiffs, and that the ownership in fee simple in such lands was claimed and exercised by the corporation under and by virtue of said conveyance; that it was claimed by the defendants that the proceedings and decision of the Supreme Court in the first case were conclusive upon the plaintiffs, and forever barred them from setting up any title under said will to the lands mentioned in the will; that in consequence of said decision of the Supreme Court the plaintiffs had been deprived of trustees, as provided by said will, whose duty it would have been to preserve the plaintiffs' rights as remaindermen in said land, and to see to it that no waste was committed upon the same, or other injury done thereto, to plaintiffs' detriment as remaindermen, and otherwise protect the plaintiffs' interests in the premises; that unless the invalidity of the proceedings and the decision of the court, and also the plaintiffs' title to the property, be declared by the court, a cloud would rest upon the plaintiffs' title, and their rights in said land as such remaindermen might be made subject to costly and difficult litigation. A paragraph was also added to the prayer of the bill that a declaratory decree be made, declaring that the proceedings, decision, and conveyances mentioned were invalid and of no effect as against the plaintiffs.

The bill as amended was demurred to by the defendants Brown and Magoon on substantially the same grounds as before. The court sustained the demurrer in a written opinion, in which the court said:

"The allegations in the amendment do not take the case out of the rules set out in the former decision rendered in this case upon demurrer to the original bill, unless the bill is now good as a bill quia timet. It has been held that the equity action of quia timet still lies, and that the jurisdiction of this action in equity has not been taken away by the statutory action to quiet title. * * * But plaintiffs are not in possession of the land in question; at least, it is not so alleged in the bill, and the allegation of the amendment as to the possibility of waste being committed would lead the court to infer that plaintiffs are out of, and the defendants or their grantees in, possession of the land. The demurrer should have been sustained, as it was, because the bill did not show that plaintiff was in possession"—citing the case of Ahmi v. Ashford, 12 Hawaii, 13.

A decree was thereupon entered dismissing the bill. From the decree the plaintiffs appealed to the Supreme Court, where the decree of the circuit court was affirmed. The Supreme Court agreed with the circuit judge that the bill was not maintainable on the ground that it was immaterial whether Irene took only a life estate or an estate in fee simple, inasmuch as she and her then husband purported in their deed to convey only the lands belonging to them, and their right, title, and interest by curtesy, dower, or otherwise in the lands of each other, and did not attempt to convey any lands belonging to their children, the plaintiffs, even if the latter had the remainder in fee in the lands in question.

The Supreme Court also concurred in the opinion of the circuit judge with respect to the bill as amended, holding that the amendments to the bill did not alter the result, in so far as the bill might be considered to declare a trust; and, considered as a bill to remove a

cloud, the Supreme Court agreed with the circuit judge that the court could not declare invalid as against a remainderman conveyances that on their face purported to convey the unquestioned interest, and only the interests, of the life tenants.

The court then proceeded to consider whether the suit could be maintained to remove a cloud by reason of the prior decisions. The court held with respect to the constitution of the court that the decision in the first case was by a de facto court, and that a decision of a de facto court was not void, and could not be questioned collaterally; that, granting that the Supreme Court did not have jurisdiction of reserved questions in equity, still it was not such a defect as rendered the decision absolutely void, and with respect to the jurisdiction of the court to construe the will, after deciding that there was no longer a trust in existence, the court held that the circuit court should have declined to construe the will, after it had decided that there was no trust. "Still," says the court, "the decision would not be wholly void. * * * If the decision was erroneous in these respects, it was mainly because there was an adequate remedy at law. But that was a matter that could be waived. * * * And this as well as the other alleged defects above mentioned could be waived on behalf of the plaintiffs, notwithstanding they are minors, at least, so as to preclude a collateral attack by the minors." The decree of the circuit court was accordingly affirmed.

The fact that no decree was entered in the first case was not mentioned by the Supreme Court in the second case, and the effect of the absence of a decree in the first case was therefore a question, and, as we view it, an important question, not passed upon or in any way adjudicated in the second case. What, the Supreme Court did in the second case was to affirm the decree of the circuit court. That decree had been entered upon the specific grounds set forth in the decree, referring to the "decision in writing herein sustaining the demurrers of the defendants." The decision in writing to whch reference was made sustained the demurrers to the bill of complaint on the ground already stated, that the bill did not state a case entitling the plaintiffs to relief in equity: (1) Because the deed of conveyance executed by Irene and her husband, referred to in the bill of complaint, did not purport to convey lands belonging to the plaintiffs; and (2) the bill did not show that plaintiffs were in possession of the land in controversy.

These objections went only to the framework of the bill under certain well-known rules of procedure, and not to the merits of the case. A more imperative rule requires that the merits of a case shall not be sacrificed to formal defects in practice or pleadings, and hence it is that such a decision is limited to the actual questions involved. Where a decree refers to the "opinion of the trial judge in terms that make it clear that the object was to refer to it, to explain what was determined, and the reasons therefor, then such opinion becomes legitimately a part of the record, and must be looked to, to explain what was in issue, and what was determined by the judgment or decree in question." Legrand v. Rickey's Adm'r, 83 Va. 862, 877, 3 S. E. 864,

871. It follows, from the rule, that the opinion of the appellate court affirming such a decree is inadmissible to show that the question determined by the trial court was different from that embraced in its decision. Robinson v. N. Y. Co., 64 Hun, 41, 18 N. Y. Supp. 728, 730; Penouilh v. Abraham et al., 43 La. Ann. 214, 9 South. 36; Ohio River R. Co. v. Fisher, 115 Fed. 929, 935, 53 C. C. A. 411; Russell v. Russell, 134 Fed. 840, 841, 67 C. C. A. 436.

Where a demurrer is sustained for want of equity, "the estoppel extends only to the precise point presented by the pleadings and decided by the ruling upon the demurrer." Dennison Mfg. Co. v. Scharf Tag, Label & Box Co., 121 Fed. 313, 318, 57 C. C. A. 9; Wiggins Ferry Co. v. Ohio & Miss. Ry. Co., 142 U. S. 396, 410, 12 Sup. Ct. 188, 35·L. Ed. 1055. A decree sustaining a demurrer is no bar to subsequent proceedings upon facts and questions of law not litigated or passed upon by such decree. Detrick v. Sharrar, 95 Pa. 521, 525. "If the first suit was dismissed for defect of pleadings, or parties, or a misconception of the form of proceeding, or the want of jurisdiction, or was disposed of on·any ground which did not go to the merits of the action, the judgment rendered will prove no bar to another suit." Hughes v. United States, 71 U. S. 232, 237, 18 L. Ed. 303; Converse v. Davis, 90 Tex. 462, 466, 39 S. W. 277.

If the decision of the Supreme Court in the second case be thus limited to the questions considered and determined in the trial court, as it must be so limited under the authority of these cases, what were the questions left open for consideration and determination in any subsequent case? Manifestly, any question involving the merits of the case, and, primarily, whether the absence of a decree in the first case in either the Circuit Court or Supreme Court of Hawaii leaves the questions involved in that case open for adjudication in this case. In considering the record in the first case, we were of the opinion that it did, and, since we find nothing in the second case to change that opinion, we might hold upon this fact alone that plaintiffs' claims in this case are open to consideration and determination upon the merits; but, the plaintiff in error contending for the bar of the second case upon the broad grounds that the questions there decided constituted in and of themselves an adjudication upon the questions decided, we will consider briefly the remaining questions in the second case.

[10] (1) Whether in the first case the Supreme Court had jurisdiction to answer the reserved questions of fact as to the intention ·of the testator, John Ii, in devising an estate to his daughter Irene and to her children.

In the second case the Supreme Court conceded that the Supreme Court in the first case had no such jurisdiction—citing Booth v. Baker, 10 Hawaii, 543, 546—but held that the defect was not such as to make the decision absolutely void. This decision is clearly not binding upon the federal court. If the Supreme Court had no jurisdiction to answer a reserved question of fact, its answer to such a question was absolutely void. County Commissioners of Hampshire, 140 Mass. 181, 182, 5 N. E. 490; Bearce v. Bowker, 115 Mass. 129;.

Terry v. Brightman, 129 Mass. 535. The effect of lack of jurisdiction in a court is a question open for the determination of any competent court. It is a "well-settled rule in jurisprudence that the jurisdiction of any court exercising authority over a subject may be inquired into in every other court, when the proceedings in the former are relied upon, and brought before the latter, by a party claiming the benefit of such proceedings." Williamson v. Berry, 8 How. 495, 12 L. Ed. 1170; Guaranty Trust Co. v. Green Cove Railroad Co., 139 U. S. 137, 147, 11 Sup. Ct. 512, 35 L. Ed. 116; Defiance Water Co. v. Defiance, 191 U. S. 184, 194, 24 Sup. Ct. 63, 48 L. Ed. 140.

(2) Whether the Supreme Court in the first case had jurisdiction to construe the will after having decided that there was no longer any trust in existence.

The Supreme Court in the second case conceded that the court in the first case, after having decided that there was no longer a trust, should have declined to construe the will. The reason for this concession is not stated. But the only possible reason that could be stated was that the court did not have jurisdiction to decide that question; but the court held that this was an error that did not make the decision void, and that it "as well as other alleged defects above mentioned," was a matter that might be waived by the plaintiff minors, so as to preclude a collateral attack by them. The answer to this proposition is the answer to the next question. The third and last question was whether the circuit court or the Supreme Court had jurisdiction over the persons of the plaintiffs, notwithstanding they were not represented by separate counsel in a controversy in which their interests were in conflict with the interests of their mother Irene. We are of the opinion that neither the Circuit nor Supreme Court obtained jurisdiction over the plaintiffs in the first case, and we do not find from the record that they waived the lack of such jurisdiction.

It therefore appears that in the second case the Supreme Court held that the court in the first case was without jurisdiction to determine the questions involved in the merits of the case. The opinion of the court that this lack of jurisdiction did not render the decision of the court upon those questions absolutely void is not an opinion binding upon the federal courts, and we do not concur in that opinion. If a court "act without authority, its judgments and orders are regarded as nullities. They are not voidable, but simply void, and form no bar to a remedy sought in opposition to them, even prior to a reversal. They constitute no jurisdiction; and all persons concerned in executing such judgments, or sentences, are considered, in law, as trespassers." Elliott v. Peirsol, 26 U. S. 328, 340, 7 L. Ed. 164; Williamson v. Berry, 8 How. 495, 555, 12 L. Ed. 1170; Lewers & Cooke v. Redhouse, 14 Hawaii, 290, 294.

It follows, from these considerations, that we do not find that there has been an adjudication in either of the Hawaiian cases foreclosing the rights of the plaintiffs in the property condemned in this case; and we do find, as did the court below, that each of the defendants in error under the will of John Ii, deceased, was the owner of an undivided interest in said land in fee simple, and is now entitled to a

one-third share or interest in the fund in court, subject to the life interest therein of their mother, Irene, or the said John Ii Estate, Limited, as the assignee of her life interest.

The decree of the District Court is affirmed